## A00A1247. GRIMES v. THE STATE.
(537 SE2d 720)

PHIPPS, Judge.

Kenneth Leon Grimes was found guilty of 13 counts of forgery in the first degree. In this appeal, Grimes asserts that the trial court erred in its recharge of the jury and also disputes the sufficiency of the evidence as well as the effectiveness of his trial counsel. After reviewing each of these issues, we affirm.

When viewed in the light most favorable to the verdict, the evidence established that Grimes, along with co-conspirator Denise Dixon, purchased about $200 worth of merchandise from Pep Boys using counterfeit bills. Store clerk Crystal Goodwin noticed that as Grimes and Dixon shopped they both appeared extremely nervous. Goodwin observed that Dixon's hands were heavily wrapped in bandaging. At the check-out register, Goodwin became more suspicious when Dixon produced a large sum of cash that appeared to have been washed. While at the check-out, Grimes instructed Dixon to be sure to get a receipt. Goodwin set aside the bills in a slot next to the customer service desk. At the end of her shift, Goodwin and her supervisor examined the bills closely and decided they were counterfeit. Pep Boys then contacted the United States Secret Service which began an investigation.

Secret Service Agent Scott Trew determined that the bills at issue were, in fact, counterfeit. He and Secret Service Agent Todd Kennedy interviewed Grimes. Initially, Grimes denied knowing anything about the counterfeit bills. But in a subsequent interview, Grimes admitted having picked up the counterfeit bills for Dixon, his then live-in girlfriend, from a man who had received them in a drug deal. Grimes knew when he obtained the bills that they were counterfeit. In a written statement, Grimes admitted accompanying Dixon to Pep Boys, then later proceeding to a different Pep Boys' location to procure a cash refund for the merchandise purchased with the counterfeit bills. Agent Kennedy explained that the process Grimes followed is a typical method by which counterfeit bills are placed into circulation and exchanged for genuine currency.

1. Grimes contends that the trial court erred in its recharge to

the jury. He claims that the court impermissibly injected its opinion by providing the jury with numerous examples about the distinction between actual and constructive possession.

The jury had asked for a reexplanation of constructive possession. To comply with that request, using the pattern charge, the court gave the legal definitions of actual and constructive possession.[1] The court then provided a few simple examples from everyday life to illustrate the two terms.

When a trial court correctly instructs the jury on the law but an exception is made to a hypothetical illustration offered by way of explanation, unless a showing is made that the illustration confused or misled the jury, this court will not narrowly scrutinize that illustration.[2] Here, no such showing has been made.[3] In any event, since the determinative issue was whether Grimes was a party to the crime, the illustrations on possession could hardly have misled or confused the jury.[4] Contrary to Grimes's claims, the jury charge as a whole, including the recharge, was correct and not misleading.[5] Nor did the recharge express or intimate any opinion by the trial court concerning any matter.[6]

2. Grimes contends that the evidence was insufficient to support a finding that he participated in the crime of forgery as opposed to merely being present at Pep Boys. He further asserts that the State failed to prove that the counterfeit bills he picked up were the ones used at Pep Boys and that the counterfeit bills turned over to federal agents were those used by Dixon.

Grimes's argument overlooks two points: that a party to a crime may be held fully culpable for committing it and that a conviction for forgery can hinge on circumstantial evidence.[7] A party to a crime may be prosecuted and convicted for the commission of the offense regardless of whether anyone else was prosecuted.[8] Forgery in the first degree requires uttering or delivering such writing.[9] Proof of uttering is met by evidence that the defendant offered to pass a forged writing to another person, declaring or asserting, directly or indirectly, by words or actions, that it was good.[10] Thus, an intent to defraud, coupled with the possession of an altered writing and deliv-

---

[1] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, p. 136 (2nd ed. 1991).
[2] *Nobles v. State*, 201 Ga. App. 483, 484 (1) (411 SE2d 294) (1991).
[3] Id.
[4] *Hall v. State*, 239 Ga. 832, 833 (2) (238 SE2d 912) (1977).
[5] See *Bean v. State*, 239 Ga. App. 106, 111 (7) (521 SE2d 19) (1999).
[6] OCGA § 17-8-57.
[7] *Dyous v. State*, 195 Ga. App. 99 (2) (392 SE2d 730) (1990).
[8] OCGA § 16-2-21.
[9] OCGA § 16-9-1 (a).
[10] *Taylor v. State*, 128 Ga. App. 13 (195 SE2d 294) (1973).

ery thereof, is sufficient to prove forgery in the first degree.[11]

Here, the evidence showed at a minimum that Grimes was a party to the crime of forgery. Grimes admitted that before the Pep Boys venture, he had met a friend of Dixon's at a prearranged location to obtain the counterfeit bills.[12] While at Pep Boys, Grimes reminded Dixon to get a receipt. Later, using that receipt, Grimes went to another store operated by Pep Boys where he exchanged the merchandise for a cash refund. Construed in a light most favorable to the verdict, this evidence was sufficient to authorize a jury to find Grimes guilty beyond a reasonable doubt of committing forgery.[13]

3. On appeal, Grimes contends, for the first time, that his trial counsel rendered ineffective assistance of counsel.

An ineffectiveness claim must be asserted at the earliest practicable moment and before appeal when the opportunity to raise such claim is available.[14] The failure to do so results in a waiver of that issue.[15] Here, new counsel was appointed in time to file a timely notice of appeal but did so without first filing a motion for new trial or otherwise seeking an evidentiary hearing on any claim of ineffective assistance of trial counsel. As a consequence, this claim is procedurally foreclosed.[16]

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED JULY 21, 2000.

*Cindi T. Yeager*, for appellant.
*Patrick H. Head, District Attorney, Andrew J. Saliba, Maria B. Golick, Assistant District Attorneys,* for appellee.

---

[11] *Heard v. State*, 181 Ga. App. 803 (2) (354 SE2d 11) (1987).
[12] See *Grant v. State*, 227 Ga. App. 243, 245 (488 SE2d 763) (1997) (evidence of acting as an accessory before fact needed to prove defendant was party to crime).
[13] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[14] *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996); *Simpson v. State*, 238 Ga. App. 109, 112 (2) (517 SE2d 830) (1999).
[15] *Howard v. State*, 233 Ga. App. 724, 729-730 (7) (505 SE2d 768) (1998).
[16] *Luke v. State*, 236 Ga. App. 543, 544 (3) (512 SE2d 39) (1999).