## A00A1460. RICHARDS v. THE STATE.
### (542 SE2d 622)

RUFFIN, Judge.

Alan Gerald Richards, Sr. was convicted of two counts of second degree vehicular homicide. On appeal, Richards challenges the sufficiency of the evidence, and he contends that he was denied effective assistance of counsel, and that the court erred in denying his motion for a directed verdict of acquittal. For reasons that follow, we affirm.

1. Following his conviction, Richards filed a timely motion for new trial. More than 30 days after the date of the judgment, he voluntarily withdrew his motion for new trial and filed this appeal. Under OCGA § 5-6-38 (a), an appeal ordinarily must be filed within 30 days of the judgment, and failure to do so divests this Court of jurisdiction.[1] Accordingly, we must first address whether this Court has jurisdiction to entertain this appeal. In so doing, we are confronted with two lines of authority interpreting OCGA § 5-6-38 (a). Under that Code section,

[a] notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of; but when a motion for new trial . . . has been filed, the notice shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion.

Although the express language of the Code section appears to require the entry of a court order to "dispose" of the motion, in *Golden v.*

---

[1] *Grant v. State*, 157 Ga. App. 390 (278 SE2d 53) (1981).

*Credico, Inc.*,[2] this Court concluded that "[a] motion for new trial can be disposed of in four ways: (1) overruled, (2) granted, (3) dismissed, or (4) withdrawn by movant." This rationale was also followed in *Heard v. State*[3] and *Booker v. Amdur*.[4]

In *Taylor v. State*,[5] however, OCGA § 5-6-38 was interpreted to require court action to dispose of a motion for new trial. Because Taylor had withdrawn his motion for new trial, this Court concluded that it lacked jurisdiction to entertain the appeal. This reasoning was followed in both *Hall v. State*[6] and *Marshall v. State*.[7]

This issue evidently was raised before the Supreme Court in *Johnson v. State*.[8] Although the majority did not expressly address the issue, the dissent asserted that the Court was without jurisdiction to entertain the appeal because the trial court never entered any order on the defendant's motion for new trial.[9] However, by addressing the appeal on its merits, the majority necessarily concluded that it had jurisdiction, implicitly ruling that a withdrawal "disposes" of a motion for purposes of filing a notice of appeal. Accordingly, we are compelled to conclude that a withdrawal of a motion for new trial constitutes a "disposal" of the motion under OCGA § 5-6-38 (a). To the extent that cases such as *Hall, Marshall,* and *Taylor* hold otherwise, they are hereby overruled.

2. In his first enumeration of error, Richards challenges the sufficiency of the evidence. On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict.[10] Moreover, as the reviewing court, we do not weigh the evidence or decide witness credibility, but only determine the sufficiency of the evidence under the standard of *Jackson v. Virginia*.[11] As long as there is some competent evidence, even though contradicted, to support each fact essential to the State's case, the jury's verdict will be upheld.[12]

So viewed, the evidence established that, following a basketball game, Richards drove seven children in his Isuzu Rodeo. None of the children was wearing a seat belt. As Richards was traveling southbound on Tara Boulevard, he entered the intersection at Tara and State Road 54. While crossing the intersection, Richards hit a pickup

---

[2] 124 Ga. App. 700, 701 (185 SE2d 578) (1971).

[3] 210 Ga. App. 805-806 (1) (437 SE2d 496) (1993).

[4] 186 Ga. App. 276 (367 SE2d 94) (1988).

[5] 173 Ga. App. 745 (327 SE2d 860) (1985).

[6] 213 Ga. App. 242 (445 SE2d 578) (1994).

[7] 205 Ga. App. 531 (422 SE2d 677) (1992).

[8] 263 Ga. 395 (435 SE2d 195) (1993).

[9] Id. at 396.

[10] *Taylor v. State*, 235 Ga. App. 323, 324 (1) (509 SE2d 388) (1998).

[11] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[12] *Kenyada v. State*, 239 Ga. App. 438, 439 (521 SE2d 408) (1999).

truck and lost control of the Rodeo. The Rodeo slid sideways, then rolled over several times. All of the children were ejected from the Rodeo, and two 13-year-old boys were killed.

Michael McKinney, a passenger in the Ford pickup truck, testified that the truck had been at a complete stop for at least a minute before the light changed from red to green. As the truck pulled into the intersection, it was suddenly struck on the front right side by the Rodeo. According to McKinney, "[h]e ran the red light. I believe that he was not paying attention to the light because he had seven boys in the car." McKinney estimated that Richards was going 60 mph, which he described as "too fast."

Although Jessie Jackson, the driver of the Ford pickup truck, died before trial, his testimony was read into evidence. According to Jackson, when the light turned green, he pulled into the intersection, and his truck was hit by a vehicle that "just came through there just like a flash," going "at a high rate of speed." Jackson testified that he had never seen "[any]one run a red light like that before."

Another driver, Brian Whitlock, was stopped in the lane immediately next to Jackson's truck. When the light turned green, Whitlock started forward, but managed to stop after spotting the oncoming Rodeo out of the corner of his eye. Whitlock testified that Jackson's truck was no more than two feet ahead of his car after he braked. Whitlock's wife, a passenger in the car, also testified that the light was green when Whitlock proceeded into the intersection.

Gary Moore, whose car was two cars behind Jackson's truck, also testified that the light had turned green. According to Moore, he saw the Rodeo for a split second before it struck a "glancing blow" to the pickup truck. In a written statement, Moore described the events as follows:

> I was at the intersection of Hwy 19/41 and Hwy 54 (going east on Hwy 54) waiting for the light to change. When the light eventually did change and traffic began to move a white pickup three cars ahead of my car was struck by a blue/green SUV that ran the red light.

Neal Spradlin, the Clayton County Traffic Engineer, testified that county traffic engineers had set the traffic control device at the intersection of SR 54 and Tara Boulevard so that the yellow caution light lasted for 4.7 seconds followed by an all red in every direction for 1.3 seconds. Spradlin further testified that, if the light for SR 54 was green, the light on Tara Boulevard would not have been green. Finally, Spradlin testified that there was no indication that the traffic light had malfunctioned on the day of the collision.

Richards was convicted of two counts of vehicular homicide

based on his failure to come to a complete stop at a red light. On appeal, Richards contends that the evidence was insufficient to establish that he ran a red light. We disagree. Five witnesses testified that the light had changed to green for vehicles traveling in the direction of the Ford pickup. Based on this evidence as well as Spradlin's testimony that the light had not malfunctioned, a rational trier of fact could have concluded that Richards failed to stop at the red light, and that this failure caused the accident and the deaths of the two children.[13]

3. In a separate enumeration of error, Richards asserts that there was no direct evidence that he ran the red light and that such evidence is required to sustain a conviction. Again we disagree.

Richards, who was traveling southbound, testified that the light in his direction was either green or yellow, but not red. No other witness who was traveling southbound was able to testify unequivocally as to the color of the southbound light. The five witnesses who testified that Richards ran the red light were traveling eastbound. Thus, they based their conclusion that Richards ran a red light on the fact that their light was green. According to Richards, "the testimony of these . . . witnesses, at best, only provided circumstantial evidence to suggest that the light was red for [him]."

The fact that "evidence may be 'circumstantial' makes it no less powerful when the circumstances proved lead directly to [a] conclusion."[14] Again, five witnesses testified that Richards ran the red light. The fact that their testimony was based on their observation of the traffic signal for eastbound travelers makes it no less compelling. Such testimony certainly was sufficient to support the jury's verdict.

*Lyons v. State*,[15] the case cited by Richards, does not require a different result. In *Lyons*, two motorists collided in an intersection. The *only* evidence that Lyons ran a red light consisted of one witness who "admitted not seeing Lyons' car until after the accident and never testified he saw the light turn red."[16] Nevertheless, that witness testified that both Lyons and the other motorist ran the red light. Under those facts, this Court concluded that there was no competent evidence that Lyons had run a red light. That is not the case here, however, where five witnesses testified that the light in the opposite direction had turned green before Richards drove into the intersection. Thus, Richards' assertion lacks merit.

4. In a motion for new trial filed by Richards' appellate counsel, Richards asserted that he was prejudiced by the ineffective assis-

---

[13] *McKinney v. State*, 213 Ga. App. 498, 500 (2) (445 SE2d 550) (1994).

[14] *Green v. State*, 244 Ga. App. 565, 566 (1) (536 SE2d 240) (2000).

[15] 208 Ga. App. 632 (431 SE2d 432) (1993).

[16] Id.

tance of his trial counsel. Before the trial court ruled, however, Richards withdrew his motion for new trial and filed this appeal.

"An ineffectiveness [of counsel] claim must be asserted at the earliest practicable moment and before appeal when the opportunity to raise such claim is available."[17] If a defendant fails to do so, he waives the issue on appeal.[18] Here, Richards had new counsel prior to filing his motion for new trial. Thus, he had an opportunity to present his ineffectiveness claim to the trial court prior to this appeal. It follows that Richards is now procedurally barred from raising the issue for the first time on appeal.[19]

5. Finally, Richards contends that the trial court erred in denying his motion for a directed verdict of acquittal. For the reasons set forth in Division 2, however, Richards' contention lacks merit.[20]

*Judgment affirmed. Johnson, C. J., Pope, P. J., Andrews, P. J., Blackburn, P. J., Smith, P. J., Eldridge, Barnes, Miller, Ellington, Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 21, 2000 —
RECONSIDERATION DISMISSED DECEMBER 14, 2000.

*Derek M. Wright, Alan M. Shenberg, Shaun C. Willie*, for appellant.

*Keith C. Martin, Solicitor*, for appellee.

---

[17] *Grimes v. State*, 245 Ga. App. 277, 279 (3) (537 SE2d 720) (2000).
[18] Id.
[19] See *Howard v. State*, 233 Ga. App. 724, 729-730 (7) (505 SE2d 768) (1998).
[20] See *Cottingham v. State*, 206 Ga. App. 197 (1) (424 SE2d 794) (1992) (standard for reviewing denial of directed verdict of acquittal is same as for reviewing sufficiency of evidence).
[1] After the filing of this lawsuit, a new department, the Department of Community Health, was created to consolidate various state agencies. DMA is now a division of the Department of Community Health, and is known as the Division of Medical Assistance.