A07A1465. HARRELSON v. THE STATE.
(653 SE2d 98)

BERNES, Judge.

Following a stipulated bench trial, Jason Travis Harrelson appeals his convictions of vehicular homicide, driving without insurance, and driving while license suspended or revoked. He contends the trial court erred in denying his motion to suppress the results of the chemical test of his blood because police failed to read him the statutorily mandated implied consent warnings. We agree with Harrelson that the trial court erred in admitting the results of the chemical test of his blood; however, we find the error harmless and therefore affirm his conviction.

Because the evidence in this case is uncontroverted and no question as to witness credibility exists, we review de novo the trial court's application of the law to the undisputed facts. *State v. Austell*, 285 Ga. App. 18, 18-19 (1) (645 SE2d 550) (2007).

The following facts were stipulated at trial:[1] On May 18, 2005, Harrelson was the driver of a vehicle that failed to maintain a single

---

[1] The parties also stipulated to the trial court's consideration of evidence submitted during the hearing on Harrelson's motion to suppress. Harrelson did not testify at the hearing or otherwise present evidence.

lane, struck a curb, and subsequently rolled over.[2] Harrelson and his two passengers were ejected from the vehicle. The back seat passenger was killed as a result of the injuries that he sustained in the crash.

All three of the vehicle's occupants had an odor of alcoholic beverages on or about their persons at the time that police arrived at the scene. Harrelson appeared dazed, confused, and combative. He initially left the scene, but returned prior to the arrival of the police. Police recovered a twelve-pack of beer with only two bottles remaining from the accident site. Harrelson later admitted to an investigating officer that the 12-pack belonged to him.

Following the accident, an officer went to the hospital where Harrelson was receiving treatment for his injuries. The officer noticed that Harrelson still had an odor of alcoholic beverages on or about his person, his speech was thick and slurred, and his movement seemed slow.

Although Harrelson was not under arrest at the time, probable cause existed for his arrest for DUI. The officer requested Harrelson's consent to give a blood and urine sample, but did not read Harrelson the statutory implied consent warnings. Harrelson agreed to the request and consented to a chemical test of his blood.

A sample of Harrelson's blood was drawn and sent to the Georgia Bureau of Investigation crime laboratory for chemical testing. After Harrelson was released from the hospital, he admitted to a police officer that he had consumed up to four beers before the accident. The chemical test ultimately revealed that Harrelson's blood had an alcohol concentration of 0.169. At the time of the accident, Harrelson's driver's license was suspended.

Harrelson was subsequently arrested and indicted for homicide by vehicle based upon a violation of OCGA § 40-6-391 (a) (1), the "less safe" DUI provision; homicide by vehicle based upon a violation of OCGA § 40-6-391 (a) (5), the unlawful alcohol concentration or "per se" DUI provision; driving without insurance; and driving while license suspended or revoked. He moved to exclude the results of the blood test, arguing that he had not been given the implied consent warnings as required by law. The trial court denied Harrelson's motion and, following a bench trial, found Harrelson guilty on all counts, but merged the vehicular homicide conviction based upon the per se DUI into the vehicular homicide conviction based on the less safe DUI. Harrelson contends the trial court erred in denying his motion to suppress.

---

[2] According to the investigating officer, Harrelson "lost control of his vehicle . . . crossed the road, went into the opposite side, hit the curb, traveled over the front lawns on Lakemont Road . . . struck two mailboxes while overturning at least once . . . [after which] the vehicle came to rest on its side."

We agree with Harrelson that the officer seeking his consent to conduct a chemical test of his blood was statutorily required to give him the implied consent warnings pursuant to OCGA §§ 40-5-55, 40-5-67.1, and 40-6-392.[3] The failure to give a suspect the statutorily mandated implied consent warnings renders the results of the state-administered test inadmissible in evidence. *State v. Causey*, 215 Ga. App. 85, 86 (449 SE2d 639) (1994); *State v. Peters*, 211 Ga. App. 755, 756 (440 SE2d 515) (1994). This is true even though the suspect may otherwise consent. The implied consent statute "affords a suspect the opportunity to refuse to submit to a State-administered test of the suspect's blood, urine, or other bodily substances." (Citations omitted.) *State v. Collier*, 279 Ga. 316 (612 SE2d 281) (2005). See OCGA § 40-5-55 (a); *Hough v. State*, 279 Ga. 711, 713 (1) (a) (620 SE2d 380) (2005).

> Ordinarily, a person is presumed to know the law and his rights secured thereby. But where the statute itself provides that a person "shall" be advised of his rights under the law, the legislature obviously meant to abrogate this presumption and replace it with the requirement that notice be given. Thus, it was necessary, under this statute, for the [requesting] officer to notify [Harrelson] of his right to have an additional test made and that this right be made known to [him].... In the absence of the advice, the [blood] test results are inadmissible.

(Citations and punctuation omitted.) *Peters*, 211 Ga. App. at 756-757.

We nonetheless conclude that, under the facts of this case, the trial court's erroneous admission of the test results was harmless. Harrelson admitted to an officer investigating the incident that he had been drinking prior to the accident and that the beer found at the accident scene belonged to him. Indeed, Harrelson conceded that as a result of his drinking, he was a less safe driver. Specifically, when the officer asked Harrelson if he thought that he was safe to drive knowing how much he had to drink, Harrelson responded, "If I was on any main road, I wouldn't have driven." Witnesses at the accident scene noted that Harrelson smelled of alcohol and appeared dazed,

---

[3] See *Hough v. State*, 279 Ga. 711, 712 (620 SE2d 380) (2005) ("[P]ursuant to the doctrine of implied consent as set forth under OCGA § 40-5-55 (a) . . . the State may constitutionally require a suspect who has not yet been arrested to submit to a chemical test of his blood, breath, urine, or other bodily substances where the suspect has been involved in a traffic accident resulting in serious injuries or fatalities and the investigating law enforcement officer has probable cause to believe that the suspect was driving under the influence of alcohol or other drugs.").

confused, and combative. The officer who met with Harrelson at the hospital smelled a strong odor of alcohol coming from his person, and noted that his speech was thick and slurred. At the time of the accident, Harrelson's driver's license had been revoked as the result of a previous DUI. Under these circumstances, the trial court's erroneous admission of the results of the chemical test of Harrelson's blood was harmless.[4] See *Caraway v. State*, 286 Ga. App. 592, 594 (3) (649 SE2d 758) (2007); *Verlangieri v. State*, 273 Ga. App. 585, 593 (2) (615 SE2d 633) (2005).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 27, 2007.

*Wystan B. Getz*, for appellant.
*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.

---

[4] The admission of chemical test results in a per se DUI case would ordinarily be harmful; however, as previously noted, the vehicular homicide count predicated on the per se DUI was merged into the other vehicular homicide count. "As merger renders a conviction void," any error as to that count was harmless. (Footnote omitted.) *Duncan v. State*, 269 Ga. App. 4, 6 (1) (602 SE2d 908) (2004).