A07A2009. THE STATE v. CATO.
(658 SE2d 124)

PHIPPS, Judge.

As a result of a traffic stop on December 28, 2006, James Cato was arrested and subsequently charged with driving under the influence of alcohol to the extent he was a less safe driver, driving with an unlawful blood alcohol level, and other traffic offenses. The trial court granted Cato's motion to suppress the results of his state-administered chemical breath tests based on its finding that Cato was not advised of the implied consent notice pursuant to OCGA § 40-5-67.1. Because the record shows otherwise, we reverse.

State-administered chemical breath test results are admissible against a person who was informed of the applicable, statutory implied consent notice; however, the state bears the burden of demonstrating compliance with the notice requirements set forth in OCGA § 40-5-67.1.[1] That Code section pertinently provides:

> At the time a chemical test or tests are requested, the arresting officer shall select and read to the person the appropriate implied consent notice from [the applicable sub-part of this Code section]. . . . If any such notice is used

---

[14] (Emphasis supplied.) OCGA § 16-1-3 (14).

[1] *Jones v. State,* 285 Ga. App. 352, 353 (2) (a) (646 SE2d 323) (2007).

by a law enforcement officer to advise a person of his or her rights regarding the administration of chemical testing, such person shall be deemed to have been properly advised of his or her rights under this Code section . . . and the results of any chemical test . . . shall be admitted into evidence against such person. Such notice shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged.

At the hearing on Cato's suppression motion, the state called the officer who conducted the underlying traffic stop. She testified that after arresting Cato for DUI, she advised him of the implied consent notice by reading language from a card she was carrying at the time. The officer did not have the card at the hearing, and instead read into evidence language from an implied consent notice card provided by the state. The officer testified that the language she read into evidence was the same language she had read to Cato. On cross-examination, Cato's attorney showed that the card from which the officer had read to Cato was dated 07/01, while the card from which the officer had read language into evidence was dated 06/05.

The court found that the officer had "identified the wrong Implied Consent card, and read the wrong card into evidence" and that "there was no evidence introduced with respect to the contents of the 07/01 card, which was the card [the officer] actually read to Defendant." Citing *Miller v. State*,[2] the court concluded, "Without having a copy of the actual card that was read to Defendant admitted into evidence, or alternatively, having the substance of that card read into evidence, the Court cannot find as a fact that the proper Implied Consent notice was properly read."

On review of a trial court's ruling on a motion to suppress, we uphold a trial court's findings as to disputed facts unless clearly erroneous; when the evidence presented on a motion to suppress is uncontroverted, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[3] Here, the trial court erred in finding there was no evidence of the contents of the card the officer read to Cato. Notwithstanding the date discrepancy between the cards at issue in this case, the officer testified that the language she read into evidence was the same language she read to Cato at the time of his arrest. We find that such language accurately informed Cato of

---

[2] 238 Ga. App. 61 (516 SE2d 838) (1999).

[3] *McDougal v. State*, 277 Ga. 493, 497 (1) (591 SE2d 788) (2004); *Jones*, supra at 353 (2).

the applicable implied consent notice. Thus, the state met its burden of demonstrating compliance with the notice requirements set forth in OCGA § 40-5-67.1.[4]

*Miller*, relied upon by the trial court, explained that an officer's conclusory statement that he had read a warning contained on a card was insufficient for the state to meet its burden of proving compliance with OCGA § 40-5-67.1, where that card was not introduced in evidence.[5] While the test results in *Miller* were properly suppressed,[6] that case is distinguishable. There was no evidence in *Miller* "as to exactly what rights [the officer] informed [the DUI suspect] of or as to the actual contents of the card."[7] Here, the record contains substantial evidence of the actual contents of the card read to Cato, and the trial court erred in finding otherwise.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JANUARY 25, 2008 —
RECONSIDERATION DENIED FEBRUARY 22, 2008.

*Robert D. James, Jr., Solicitor-General, Steven R. Johnston, Assistant Solicitor-General*, for appellant.
*Michael M. Hawkins*, for appellee.

---

[4] *Jones,* supra at 353-354 (2) (a) (determining that where the arresting officer testified that he had read the defendant the implied consent notice from a card he had since lost, the state remedied any proof deficiency regarding whether the defendant had been adequately informed of the implied consent notice with testimony that the officer's lost card contained the same language as another card introduced into evidence); *Cullingham v. State,* 242 Ga. App. 499, 500 (3) (529 SE2d 199) (2000).

[5] *Miller,* supra at 62.

