## A09A0226. DANIEL v. THE STATE.
(679 SE2d 811)

ADAMS, Judge.

Tracy Lashon Daniel was tried by jury and found guilty of driving under the influence of alcohol (less safe), driving under the influence of alcohol (per se), homicide by vehicle first degree (less safe), homicide by vehicle first degree (per se), and homicide by vehicle first degree (reckless driving). The two convictions for DUI were merged for sentencing into the less safe count. And the three convictions for vehicular homicide were merged into the corresponding less safe count. Following the denial of her motion for new trial, Daniel appeals. She contends the trial court erred by denying her motion to suppress the results of two blood-alcohol tests. She also contends there was insufficient evidence to support three of the charges.

Construed in favor of the verdict, the evidence shows that late in the morning of Saturday, May 31, 2003, Daniel picked up her two children and a neighbor child, seven-year-old Johnny Troutman, from Troutman's home. On their way to the store, Daniel lost control of her van and veered across oncoming traffic, off the road, and into a tree. She claimed a tire had a blowout, and there was evidence that some of the tires were in poor condition. In response to an emergency call, paramedics took all four of the van's occupants to Coffee Regional Medical Center. Troutman died as a result of the accident. An autopsy revealed that he had sustained lethal blunt force trauma to the head and chest. His injuries were consistent with those of a child who had not been restrained during a car accident.

A treating paramedic asked Daniel routine questions, including whether she had recently consumed any drugs or alcohol. Daniel answered that she had drunk two beers. At the hospital, Daniel was prepared for medical care, which included having a blood sample drawn for any testing a treating physician might order. The treating physician ordered a blood-alcohol test and the results showed Daniel's blood-alcohol level was 0.235 grams of alcohol per 100 milliliters. State Troopers Milburn and Sumner conducted the

246

preliminary investigation, during which Milburn went to the hospital where, roughly two hours after Daniel arrived, he requested samples of Daniel's blood and urine for chemical testing. This "State-administered" blood test showed Daniel's blood-alcohol level was 0.157 grams of alcohol per 100 milliliters. In a voluntary statement, Daniel admitted drinking six beers the previous night. And one witness saw Daniel and her husband purchase a 22-ounce beer early on the morning of the wreck; and another saw Daniel later that morning sitting in the van with a large bottle of beer and saw her throw the cap out the window.

In July 2005, Milburn, the lead investigator on the case, died. In September, Daniel filed a motion to suppress the results of the State-administered blood test. Daniel argued that without Milburn's testimony, the State would be unable to show that Milburn had probable cause to suspect that Daniel was under the influence of drugs or alcohol when he ordered the blood test. She also argued the State could not prove that it had complied with the terms of the implied consent statute. The trial court denied the motion. At trial, Daniel objected to admission of the results of the hospital-administered blood test asserting a failure to lay a proper foundation. The trial court overruled her objection.

1. At a minimum, the evidence was sufficient to sustain the convictions of driving under the influence (less safe and per se) and vehicular homicide as a result. "In a less safe case, the State must prove that the defendant had impaired driving ability as a result of drinking alcohol." (Citation and punctuation omitted.) *State v. Ellison*, 271 Ga. App. 898, 902 (3) (b) (611 SE2d 129) (2005). Daniel admitted to drinking two beers that morning; she was seen with beer that morning; she was not aware whether the children were buckled in as is required by law, and the victim probably was not buckled in; Daniel had a 0.235 blood-alcohol level shortly after the accident; she smelled of the odor of alcohol; and she was unable to control her automobile, all of which led to the death of a child. It was for the jury to decide the reasonableness of the hypotheses that Daniel drove off the road because of problems with the tires on the van. See, e.g., *Norton v. State*, 280 Ga. App. 303, 305 (640 SE2d 48) (2006).

2. Daniel contends the trial court erred by admitting into evidence the hospital-administered blood test. A document of the results of such a test is admissible at trial under the routine business record exception to hearsay, provided the proponent lays the proper foundation. *Dixon v. State*, 227 Ga. App. 533, 535 (4) (489 SE2d 532) (1997). A proper foundation includes testimony of a witness familiar with the method of record keeping, stating that it was the regular course of business to keep such records, that this record was kept in the regular course of business, and that it was made at or within a

reasonable amount of time after the event it records. OCGA § 24-3-14. Writings may be admitted into evidence under this exception if they contain routine facts whose accuracy is not affected by bias, judgment or memory of the author. *Martin v. Baldwin*, 215 Ga. 293, 299 (2) (c) (110 SE2d 344) (1959).

Here, the State laid the foundation for the hospital-administered test as a routine business record with the testimony of two witnesses. Mindy Lott, the Director of Health Information Services and custodian of medical records at Coffee Regional, testified that when a blood test is completed in the hospital, the results are printed out then entered into the hospital computer system in the normal course of business, and the printout is stored as a hard copy. The printout contains only the factual data of the test results. Teresa Chaney, the lab manager, testified that she is familiar with the usual practices and policies of the emergency room and that it is the normal procedure of emergency room personnel to draw a patient's blood once they are admitted, before the patient has been seen by an attending physician. The certified copy of the test results printout showed that Daniel's blood was drawn on May 31, 2003 at 12:10 and the test was ordered on May 31, 2003 at 12:28 p.m. within the normal procedures of the hospital.

Thus the evidence showed that the test was completed in the regular course of business, a record was kept in the regular course of business, the test results show only factual data, and blood test records are usually made at or within a reasonable amount of time after the blood was tested. Although neither witness testified that Daniel's test was recorded within a reasonable time after the results were generated, it was the usual practice of the hospital to make the record contemporaneously to generating a printed blood test result, and the printed result is time stamped "5/31/2003 12:38," only ten minutes after the blood test was ordered. Finally, there is no requirement that the testifying witness have personal knowledge of the specific document's creation. *Oldham v. State*, 205 Ga. App. 268, 270 (1) (422 SE2d 38) (1992). Accordingly, we find no error in admitting into evidence the hospital-administered blood test. *Dixon*, 227 Ga. App. at 535 (4).

Daniel contends the State was required to go beyond the foundation required for the business records exception when offering a hospital-administered blood test into evidence and that the State must show the chain of custody of the blood sample, that the blood sample was properly handled, and that the testing machine was properly calibrated. But Daniel did not object on these grounds, and "a party making an objection for lack of foundation must specify the foundational element he contends is lacking." *Tolver v. State*, 269 Ga. 530, 532 (2) (500 SE2d 563) (1998). See also *Warner v. State*, 281

Ga. 763, 766 (3) (642 SE2d 821) (2007).

3. Daniel contends the trial court erred by denying her motion to suppress the State-administered blood test on the ground that the State failed to show that the officer had probable cause to believe Daniel had been driving under the influence of an intoxicating substance at the time he requested the test. See *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003); *Hough v. State*, 279 Ga. 711 (620 SE2d 380) (2005). At the suppression hearing, the State presented Trooper Holton's testimony that Trooper Milburn had told him over the phone that he had detected the odor of alcohol on Daniel at the hospital. Daniel objected to Holton's testimony on the grounds that it was hearsay and violated her right to confront the witness under the Sixth Amendment of the United States Constitution and the Georgia Constitution. But hearsay is admissible during a suppression hearing when determining the existence of probable cause. *Bell v. State*, 291 Ga App. 437, 439 (1) (662 SE2d 248) (2008). And the right to confront does not apply under those circumstances. *Fair v. State*, 284 Ga. 165, 176 (3) (e) (664 SE2d 227) (2008); *Leonard v. State*, 228 Ga. App. 792, 794 (2) (492 SE2d 747) (1997). " '[T]he trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.' [Cit.]" *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995).The trial court's determination that the State established probable cause to request the blood-alcohol test is not error.

4. Finally, Daniel also contends the court erred by admitting the State-administered blood test results because the State failed to meet its burden of demonstrating compliance with the notice provisions of the implied consent statutes — OCGA §§ 40-5-55 and 40-5-67.1. See *State v. Cato*, 289 Ga. App. 702 (658 SE2d 124) (2008).[1] But pretermitting whether the State had sufficient proof that Milburn read the implied consent notice to Daniel, any possible error was harmless. First, given that the hospital-administered test showed a higher result than the State-administered blood test, the State results were cumulative at worst. Therefore, it is not highly probable the State results contributed to the conviction. See generally *Richards v. State*, 269 Ga. 483, 486 (500 SE2d 581) (1998). Furthermore, because the per se DUI charge and the vehicular homicide count predicated on the per se DUI were merged into the corresponding less safe counts, those counts are void and any error as to those counts was harmless. *Duncan v. State*, 269 Ga. App. 4, 6

---

[1] Daniel admitted in a written statement that the officer may have read the statement but she is not sure because she was in and out of consciousness after the accident.

(1) (602 SE2d 908) (2004); *Harrelson v. State*, 287 Ga. App. 664, 667, n. 4 (653 SE2d 98) (2007). For the same reason, Daniel's assertion that there was insufficient evidence to support the charge of vehicular homicide based on reckless driving is moot. Id.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JUNE 8, 2009.

*John C. Culp*, for appellant.
*Richard E. Currie, District Attorney*, for appellee.