A11A0242. BLACK v. THE STATE.

(711 SE2d 428)

MILLER, Presiding Judge.

Following a jury trial, Eric Black was found guilty of driving under the influence of alcohol (DUI less safe) (OCGA § 40-6-391 (a) (1)), driving with an unlawful alcohol concentration (DUI per se) (OCGA § 40-6-391 (a) (5)), failure to maintain lane (OCGA § 40-6-48 (1)), and disorderly conduct (OCGA § 16-11-39 (a) (3)). The trial court's sentence merged the DUI per se count into the DUI less safe count. Black appeals, contending that the trial court erred (i) in failing to find a discovery violation when the State did not furnish a copy of the DUI arrest report before trial; (ii) in expressing an opinion regarding the breath test evidence during the charge to the

jury; (iii) in finding that the State laid a proper foundation for admission of the Intoxilyzer 5000 test under OCGA § 40-6-392 (a) (1) (A); and (iv) in misstating the allegations of the DUI per se count during its charge to the jury. We discern no error and affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence shows that on the evening of August 7, 2009, officers with the City of Riverdale Police Department stopped Black's vehicle after observing it swerve into an opposite lane of traffic and fail to maintain its lane. When the officers approached Black, they noticed a strong odor of alcohol coming from his breath and person, his eyes were bloodshot and watery, and his speech was extremely slurred. As he exited the vehicle, Black stumbled and was unbalanced. He failed the field sobriety tests administered to him on the scene. As Black performed the tests, he stumbled toward the road. An alco-sensor breath test produced a positive reading for the presence of alcohol. Black was arrested. After being read the implied consent warning, Black consented to the State-administered breath test using the Intoxilyzer 5000 machine, which registered alcohol concentration levels of 0.124 and 0.127 grams. When Black was informed of the test results, he became enraged, cursed at the officers, and called them obscene names.

1. Black contends that he is entitled to a new trial on the DUI less safe charge, arguing that the trial court had made an erroneous finding that the State's failure to produce a DUI arrest report prior to trial did not amount to a discovery violation under OCGA § 17-16-23 (b)[1] and *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Notwithstanding his contention, no error has been shown.

When the case was called for trial, Black announced that he was not ready to proceed due to an alleged discovery violation committed by the State. Black asserted that in accordance with his written pretrial discovery requests, the State was required to produce a complete copy of any written scientific reports within ten days of trial. Although the State had previously provided Black with a copy

---

[1] OCGA § 17-16-23 (b) pertinently provides:

    In all criminal trials the defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal. . . . If the scientific report is in the possession of or available to the prosecuting attorney, the prosecuting attorney must comply with this Code section at least ten days prior to the trial of the case.

Subsection (c) of the statute states that the prosecution's noncompliance with this provision shall result in the report being excluded from evidence in the prosecution's case-in-chief or in rebuttal.

of a narrative police report that purportedly reflected information regarding the field sobriety testing, Black asserted that a supplemental DUI arrest report had not been furnished until the day of trial. Black argued that the DUI arrest report was discoverable as *Brady* material and as a scientific report to the extent that it contained information regarding the horizontal gaze nystagmus ("HGN") test. The trial court compared the DUI arrest report to the narrative police report that had previously been produced and concluded that they contained the same information. Based upon its finding, the trial court ruled that there was no discovery violation.

Significantly, the reports at issue have not been included in the appellate record. Consequently, we are unable to review the trial court's finding.

> An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. When a portion of the evidence bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result.

(Citation omitted.) *McKinney v. State*, 293 Ga. App. 419, 421 (2) (667 SE2d 210) (2008). Under these circumstances, we must presume that the evidence before the trial court supported its ruling. Id.

2. Black further contends that the trial court's charge to the jury erroneously expressed an opinion regarding the evidence by explaining the difference between the alco-sensor field test and the state-administered chemical test. Again, we discern no error.

OCGA § 17-8-57 proscribes that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Black contends that the trial court violated this provision by charging the jury as follows:

> I charge you that [a]lco-[s]ensor results are not admissib[le] as to the amount of alcohol in a person's blood. Such results can be presented only as positive or negative for the presence of alcohol. And by [a]lco-[s]ensor[,] I [am] referring to the field hand-held device that an officer would use on the side of the road as compared to the state-administered chemical test which is administered after reading the Implied Consent.

Contrary to Black's contention, the trial court's comments amounted to no more than an explanation that clarified its charge applicable to the alco-sensor field test. The trial court's explanation was a correct statement of the law pertaining to alco-sensor test results and did not express or intimate an opinion regarding the evidence. See *Capps v. State*, 273 Ga. App. 696, 697 (1) (615 SE2d 821) (2005); *Grimes v. State*, 245 Ga. App. 277, 277-278 (1) (537 SE2d 720) (2000).

3. Lastly, Black claims that the trial court erred in finding that the State laid a proper foundation for admission of the Intoxilyzer 5000 test. He also claims that the trial court misstated the allegations of the DUI per se count during its charge to the jury. However, we need not reach these claims of error since they are predicated upon the DUI per se count, which was merged into the DUI less safe conviction. In light of the merger, the DUI per se count is void and any error as to that count was harmless. See *Daniel v. State*, 298 Ga. App. 245, 248-249 (4) (679 SE2d 811) (2009); *Harrelson v. State*, 287 Ga. App. 664, 667, n. 4 (653 SE2d 98) (2007) ("As merger renders a conviction void, any error as to that count [is] harmless.") (citation and punctuation omitted).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JUNE 14, 2011.

*Sumeet P. Shah*, for appellant.
*Tasha M. Mosley, Solicitor-General, Paula M. Mickens, Assistant Solicitor-General*, for appellee.