### A11A1067. GREENE v. THE STATE.
(722 SE2d 77)

BARNES, Presiding Judge.

Following a jury trial in the State Court of Henry County, Harry Greene was found guilty of DUI less safe[1] and DUI per se.[2] The trial court denied his motion for new trial, and Greene appeals, contending that the trial court erred in denying his Sixth Amendment fair cross-section claim, and erred in refusing to give his requested charge on circumstantial evidence. Upon our review, we affirm.

1. The record below shows that before Greene's jury trial, he submitted a written challenge to the jury array in which he main-

---

[1] OCGA § 40-6-391 (a) (1).
[2] OCGA § 40-6-391 (a) (5).

tained that the current jury list from which his array was drawn, of which 13.8 percent was African-American, is not a true representation of the voting-aged African-American population in Henry County. Greene contended that the composition of the jury list should reflect the more current population of African-Americans in the county of 31 percent, as found by the United States Census Bureau's 2008 American Community Survey ("ACS"), rather than the 13.9 percent reflected in the 2000 census. The trial court proceeded with jury selection, but released the jury without swearing it in. It thereafter conducted an evidentiary hearing on the array challenge, and after denying the challenge, proceeded with Greene's trial.

Under OCGA § 15-12-162,

> [t]he accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed.

"[T]he Constitution does not guarantee that the jury impaneled in a particular case will be a representative cross-section of the community. The correct inquiry concerns the procedures for compiling the jury lists and not just the composition of a particular jury." (Citations omitted.) *Lane v. State*, 239 Ga. App. 230, 231 (2) (b) (520 SE2d 705) (1999). In so inquiring, the party challenging the composition of a jury array bears the burden of showing that a distinct and identifiable group is significantly underrepresented in the array. *Anthony v. State*, 213 Ga. App. 303, 305 (2) (444 SE2d 393) (1994).

At the hearing, the clerk of the Henry County Superior Court, who is also the clerk of the county jury commission, testified that the commission compiles a master jury list every two years, composed of county residents with a driver's license, a state-issued identification card, or who are registered to vote. See OCGA § 15-12-40 et seq.[3] The commission determines how many grand and trial jurors the county courts should need for the next two years. It then draws that number of qualified jurors from the master list, using a formula so that the percentages of various cognizable groups — race, age, and gender — placed on the grand and trial jury lists match the percentages of

---

[3] In the "Jury Composition Reform Act of 2011," the legislature repealed OCGA §§ 15-12-40 through 15-12-45, effective July 1, 2012, and substituted OCGA § 15-12-40.1, which establishes a system for producing a statewide master jury list from which county jury commissions will obtain their master jury lists.

those groups reported in the most current census. In this case, the percentage of African-Americans in the master list was 36.9 percent, but the commission reduced the percentage of African-Americans on the grand and trial jury lists to 13.9 percent because that was the percentage of African-American Henry County residents reported in the 2000 census. As of the hearing, the commission had not yet received the 2010 census.

Greene presented data from the ACS, the United States Census Bureau's annual estimate of local population statistics, which showed that in 2008, Henry County's African-American voting age population was 31.03 percent. His expert, a professor of industrial and systems engineering at Georgia Tech, testified as to the veracity of the methodology and results of the ACS. The expert testified that the true proportion of Henry County's African-American voting age population is at least fifteen percent higher than that reflected by the jury list, and was increasing by about two percent per year.

In its motion denying Greene's challenge to the jury array, the trial court found that he had

> introduced evidence from the jury commission and from the ACS to show the disparity between the proportion of African-Americans on the jury list and the proportion of African-Americans in the jury-eligible community at large is at least 17% . . . [and] therefore met [his] burden to prove the state-mandated procedure systemically excluded African-Americans from the jury array.

The trial court, however, concluded that, even though Greene had made a prima facie showing of a fair cross-section violation, the State demonstrated a significant state interest to rebut the prima facie showing, in that it "is justified in using the Decennial Census as part of the State's significant interest in 'obtaining comprehensiveness and objectivity' in the jury array construction process."

> To make a prima facie claim of a fair cross-section violation, a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group [on the trial jury list] is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process. A fair cross-section claim is "almost identical" to a claim raised directly under the equal protection clause of the Fourteenth Amendment, "with the one prominent exception being that the claimant need not

demonstrate any *intent* to under-represent a cognizable group. However, a prima facie showing of a fair cross-section violation can be rebutted if the State can demonstrate that "attainment of a fair cross section (is) incompatible with a significant state interest."

(Citations and punctuation omitted.) *Williams v. State*, 287 Ga. 735, 737-738 (2) (699 SE2d 25) (2010).

Greene maintains that the trial court erred in finding that the State had rebutted his prima facie case by showing that it has a sufficient state interest in using the Decennial Census head count because the Unified Appeal Procedure ("UAP") does not apply to misdemeanor cases. The UAP requires the trial court in a case in which the death penalty is sought to compare the percentages of cognizable groups on the grand and trial jury lists with the percentages of those groups in the population as measured by the most recent available census report; to certify there is no significant under-representation of any of those groups; and to correct any such significant under-representation. UAP II (C) (6); OCGA § 15-12-40; *Ramirez v. State*, 276 Ga. 158, 163 (3) (575 SE2d 462) (2003).

The UAP states that there should be no imbalances for cognizable groups greater than five percent, UAP II (E).[4] In *Williams*, however, where African-American persons were under-represented by 17.49 percent, our Supreme Court held:

> [T]he [UAP] provides a statewide procedure for creating and evaluating jury source lists, and that method was designed by this Court to promote adequate representation of cognizable groups through the use of a comprehensive and objective standard, the same standard that is invoked with unqualified confidence in the case relied upon by the dissent. Although, in some instances, that procedure may create temporary, self-rectifying anomalies as Decennial Census reports grow old, we conclude that the ill done by those temporary anomalies is outweighed by the other benefits of the procedure. Based upon our careful consideration of the issue, we hold that a continued adherence to the requirements of the [UAP] regarding the balancing of cognizable groups to match the most-recent Decennial

---

[4] Generally, an absolute disparity between the percentage of a group in the population and its percentage on the jury list of less than five percent is almost always constitutional; an absolute disparity between five and ten percent is usually constitutional; and an absolute disparity of over ten percent is probably unconstitutional. *Morrow v. State*, 272 Ga. 691, 692 (1) (532 SE2d 78) (2000).

Census is justified by a sufficiently-significant state interest.

*Williams v. State*, 287 Ga. at 738 (2).

Although Greene correctly maintains that the UAP does not apply to misdemeanor cases, we see no possible rationale for concluding that the State's use of the Decennial Census to provide a "comprehensive and objective standard" to promote adequate representation would prove acceptable in capital cases, but not so in misdemeanor cases. Our Supreme Court has found that the "balancing of cognizable groups to match the most recent Decennial Census is justified by a sufficiently-significant state interest," and we are bound by such determination because in this case that method was utilized. See *Williams v. State*, 287 Ga. at 738 (2). Accordingly, the trial court did not err in denying Greene's fair cross-section challenge to the jury array.

2. Greene also contends his conviction should be reversed because the trial court erred in failing to give his requested jury charge on circumstantial evidence. We do not agree.

Greene was found guilty of DUI less safe, OCGA § 40-6-391 (a) (1), and DUI per se, OCGA § 40-6-391 (a) (5). The officer who stopped Greene testified that he performed field sobriety tests on Greene, and that during the horizontal gaze nystagmus test, Greene exhibited a lack of smooth pursuit, "visible jerks," and onset of nystagmus prior to 45 degrees. According to the officer, Greene also exhibited poor balance while performing the walk and turn test, and showed poor balance when performing the one-leg stand test. The officer also discovered a clear water bottle in Greene's vehicle that contained a "non-clear liquid" and emitted "a very strong odor" of alcohol. The officer arrested Greene for DUI less safe. After the officer read him the implied consent warning, Greene elected to take a breath test, which was later performed at the jail on an Intoxilyzer 5000. That test resulted in 0.080 and 0.083 readings for blood alcohol concentration.

The bright-line rule established by the Supreme Court in *Mims v. State*, 264 Ga. 271 (443 SE2d 845) (1994), imposes a duty upon the trial court to give this charge when "the case includes both direct and circumstantial evidence *and the defendant has requested a charge on circumstantial evidence.*" (Citation omitted; emphasis supplied.) Id. See also *Taylor v. State*, 278 Ga. App. 181, 183 (2) (628 SE2d 611) (2006). We have held that in a DUI case,

> the result of a blood alcohol test of a driver showing alcohol content greater than [0.08] must be characterized as direct evidence; it is consistent only with the conclusion that the

person from whom the blood was drawn was in violation of OCGA § 40-6-391 (a) (5). . . . By the same token, the opinion testimony of a trained officer based upon his observation of an accused that the accused was impaired and a less safe driver is consistent only with the conclusion that the accused was driving in violation of OCGA § 40-6-391 (a) (1). It, too, is direct evidence. But the evidence upon which the officer's opinion is based must be characterized as circumstantial. Failing field sobriety tests, for instance, may be caused by illness or handicap; the odor of alcohol about one's person may derive from alcohol inadvertently spilled on one's clothing by another.

*Waits v. State*, 232 Ga. App. 357, 359 (2) (501 SE2d 870) (1998).

Pretermitting whether the trial court erred in failing to charge the jury on circumstantial evidence, Greene's request was predicated upon the DUI less safe count, which was merged into the DUI per se conviction. In light of the merger, the DUI less safe count is void, and any error as to that count was harmless. See *Daniel v. State*, 298 Ga. App. 245, 248-249 (4) (679 SE2d 811) (2009); *Harrelson v. State*, 287 Ga. App. 664, 667, n. 4 (653 SE2d 98) (2007) ("As merger renders a conviction void, any error as to that count [is] harmless.") (punctuation omitted).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 17, 2011 — 

*David C. Abbott, J. Scott Key*, for appellant.
*Charles A. Spahos, Solicitor-General, Brian M. Johnston, Assistant Solicitor-General*, for appellee.