### A11A1941. TRAVIS v. THE STATE.
(724 SE2d 15)

MILLER, Judge.

Following a jury trial, Kaitlin Travis was convicted of driving under the influence (DUI) (OCGA § 40-6-391 (k) (1)), reckless driving (OCGA § 40-6-390 (a)), and speeding (OCGA § 40-6-181 (b) (5)). Travis filed a motion for new trial, which the trial court denied. Travis appeals, arguing that (1) there was insufficient evidence to support her convictions; she further argues that the trial court erred by (2) failing to exclude the results of a state-administered breath test, because the implied consent notice was misleading, inaccurate, and ambiguous; (3) denying Travis's motion for mistrial where the jury heard the numeric result of Travis's alco-sensor test; (4) denying Travis's motion for mistrial after the prosecutor expressed his personal opinion as to the evidence; (5) failing to instruct the jury on the statutory presumption of sobriety; (6) permitting the jury to view a law enforcement training video that depicted a horizontal gaze nystagmus ("HGN") sobriety test; and (7) failing to merge her speeding and reckless driving convictions in sentencing. We agree with respect to Travis's last enumeration insofar as the offense of speeding should have merged into that of reckless driving, and we therefore vacate Travis's speeding conviction and sentence. As to Travis's other six enumerations of error, however, we discern no error and affirm.

Viewed in the light most favorable to the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979), the evidence shows that after midnight on September 13, 2009, when Travis was 20 years old, she was stopped by a Georgia State Patrol trooper for exceeding the posted speed limit in a construction zone. During the traffic stop, the trooper detected an odor of alcohol emanating from Travis. He asked her step out of her vehicle in order to perform a HGN sobriety test and have Travis blow into a portable alco-sensor device, both of which indicated the presence of alcohol. Although Travis initially told the trooper that she had not had anything to drink, she later admitted to having consumed alcohol earlier in the day. Travis consented to a state-administered breath test, which resulted in blood alcohol readings of 0.037 and 0.036 grams. Travis was arrested for speeding and DUI, and was later charged with reckless driving.

1. Travis argues that there was insufficient evidence to support

her reckless driving conviction.[1] On appeal from a criminal conviction, we view the evidence in a light most favorable to the jury's verdict to determine whether the evidence was sufficient to prove guilt beyond a reasonable doubt. *Jackson*, supra, 443 U. S. at 319 (III) (B).

"Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." OCGA § 40-6-390 (a). "The offense of reckless driving may be committed in a variety of ways, and whether a defendant's manner of driving under the circumstances demonstrated a reckless disregard for the safety of others is a question that is reserved for the jury." (Citation omitted.) *Bautista v. State*, 305 Ga. App. 210, 212 (1) (699 SE2d 392) (2010).

On appeal, Travis concedes that she was speeding, but challenges the absence of evidence showing any specific reckless acts committed by Travis. Even when unaccompanied by other traffic violations, however, speeding "can form the basis for a reckless driving conviction if the [S]tate presents evidence that a defendant was driving at an excessive rate of speed given the posted speed limit and the driving conditions existing at the time." (Punctuation, footnote and emphasis omitted.) *Fraser v. State*, 263 Ga. App. 764, 765-766 (1) (589 SE2d 329) (2003). Here, the state trooper testified that Travis was driving 32 miles per hour above the posted speed limit on a portion of the highway designated as a construction zone and along which construction barrels were situated. In addition, Travis was driving her vehicle late at night after having admittedly consumed alcohol. This evidence was sufficient to show that Travis was driving her vehicle in a manner exhibiting a reckless disregard for the safety of others. Therefore, we affirm Travis's reckless driving conviction.

2. Travis contends that the trial court erred by denying her motion to exclude the results of a state-administered breath test, arguing that the state trooper's implied consent warning was misleading, inaccurate, and ambiguous.

> When we review a trial court's decision on . . . motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented,

---

[1] We need not address Travis's challenge to the sufficiency of evidence to support her speeding conviction, because, as explained in Division 7 below, that conviction must be vacated for other reasons.

the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

> One who operates a motor vehicle on Georgia's highways is deemed to have given consent to chemical testing of a bodily substance to determine the presence of alcohol or other drugs. Although consent is implied, before test results may be admitted into evidence the state must show that the accused had been advised of his rights under the Implied Consent Statute.

(Footnotes omitted.) *State v. Peirce*, 257 Ga. App. 623, 625 (1) (571 SE2d 826) (2002); see OCGA § 40-5-67.1 (b). For suspects under the age of 21, OCGA § 40-5-67.1 (b) (1) requires the arresting officer to give an implied consent notice stating in pertinent part that "[i]f you submit to testing and the results indicate an alcohol concentration of 0.02 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year." The statute further provides that the implied consent notice "need not be read exactly so long as the substance of the notice remains unchanged." OCGA § 40-5-67.1 (b).

Here, the videotape of the stop and arrest shows that the state trooper read Travis the appropriate implied consent notice for an underage suspect, but initially misstated the legal limit as "0.082," before correcting himself within one second to indicate the legal limit as 0.02.[2] Travis thereafter agreed to submit to a state-administered breath test, which registered blood alcohol readings of 0.037 and 0.036. The trial court denied Travis's motion to exclude the results of her breath test, finding that the implied consent notice was properly read in light of the trooper's correction.

"The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing." (Punctuation and footnote omitted.) *In the Interest of R. M.*, 305 Ga. App. 483, 485 (1) (699 SE2d 811) (2010). In arguing that the state trooper's implied consent notice was not substantively accurate in this case, Travis relies primarily on *Kitchens v. State*, 258 Ga. App.

---

[2] The videotape recording specifically shows the trooper stating the legal limit as "0.082 [one second pause] 0.02 grams or more." The trooper explained that he had meant to say 0.02 grams or more, and was merely trying to correct himself after making the mistake of saying 0.08 grams.

411 (574 SE2d 451) (2002). However, that case is distinguishable. There, the arresting officer "drastically overstat[ed]" the legal limit of blood alcohol concentration as 10 grams instead of 0.10 grams. *Kitchens*, supra, 258 Ga. App. at 412-414 (1). The officer made this overstatement twice — once when he read the implied consent notice and again in response to the defendant's confusion about the officer's implied consent. Id. at 412 (1). Significantly, the officer in *Kitchens* not only repeatedly overstated the legal limit, but also misinformed the defendant that her Alabama driver's license would be suspended if she refused to submit to the breath test. Id. at 412-413, 414 (1) ("[E]ven assuming that drastically overstating the legal limit of alcohol concentration had no effect on [the defendant's] decision to submit to the state's test, the record discloses a clearer causal connection between the officer misinforming [the defendant] about the consequences of her refusal to take the test and her decision to submit to the test.").

Here, unlike the implied consent notice in *Kitchens*, the state trooper's misstatement of the legal limit amounted to a single slip of the tongue; he immediately corrected himself to indicate the legal limit as 0.02 and otherwise provided no additional misstatements. Moreover, the videotape recording demonstrates that before the trooper read the implied consent notice, Travis told the trooper that she knew 0.08 grams was the legal limit applicable to individuals over the age of 21. Under the circumstances of this case, we cannot say that the trooper's initial overstatement of the legal blood alcohol concentration, which he corrected immediately, was so misleading that it rendered Travis incapable of making an informed decision about whether to submit to chemical testing. Therefore, the trial court did not err in denying Travis's motion to exclude the breath test results.

3. Travis argues that the trial court erred by denying her motion for mistrial after the jury heard the numerical result of the alco-sensor test. "The abuse of discretion standard applies to the review of the denial by the trial court of a motion for mistrial." (Citation omitted.) *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995).

An alco-sensor is used only as an initial screening measure that gives a positive/negative result and aids the police officer in determining probable cause to arrest a motorist suspected of DUI of alcohol. *Heller v. State*, 234 Ga. App. 630, 632 (3) (507 SE2d 518) (1998). It is not a tool used to determine the amount of alcohol in a person's blood, and numeric results of an alco-sensor test are inadmissible. Id. Accordingly, the State agreed at trial to mute the portion of the videotaped traffic stop during which Travis read out loud the numeric result of her alco-sensor test. When the videotape

was played for the jury, however, the State accidentally restored the volume approximately one second too soon, so that the jury heard Travis state the numerical result of ".04." Travis subsequently moved for a mistrial, which the trial court denied. The trial court found that the jury's hearing of the numeric result alone, without any sort of explanation as to what that number meant, was not grounds for a mistrial. The trial court nevertheless suggested the issuance of a curative instruction informing the jury that alco-sensor results are not used as evidence of the amount of alcohol in a person's blood. See, e.g., *Simms v. State*, 223 Ga. App. 330, 333 (1) (477 SE2d 628) (1996) ("While it was error to have the trooper testify as to the test score obtained by appellant on the alco-sensor test, this error was rendered harmless by the timely giving of a curative instruction.") (citation omitted). To avoid drawing undue attention to the numeric result, the parties agreed to have the trial court issue its curative instruction at the end of the trial along with its other jury instructions. The jury was given the following curative instruction:

> Members of the jury, I instruct you that with the alco[-]sensor device, which is a portable breath testing device, the results are not used as evidence of the amount of alcohol. The alco[-]sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol.

We note that Travis failed to timely renew her motion for mistrial after the issuance of this curative instruction and thus waived any error in the denial of that motion. See *Bell v. State*, 294 Ga. App. 779, 782 (5) (670 SE2d 476) (2008). Even if Travis had properly preserved this matter, however, given the trial court's jury instruction, along with the totality of the evidence which was sufficient by itself to support the jury's finding that Travis was guilty beyond a reasonable doubt of DUI,[3] we find no abuse in the trial court's discretion in denying Travis's motion for mistrial. See *Sturdy v. State*, 192 Ga.

---

[3] Notably, the state trooper detected an odor of alcohol emanating from Travis and observed six out of six possible clues on the HGN test; the alco-sensor tested positive for the presence of alcohol; Travis admitted to having consumed alcohol earlier in the day; and the state-administered breath test indicated blood alcohol levels of 0.037 and 0.036. See *Goddard v. State*, 242 Ga. App. 154, 154-155 (1) (529 SE2d 184) (2000) (concluding evidence was sufficient to support defendant's conviction for DUI when he was under the age of 21, where officer detected a strong odor of alcohol emanating from defendant's vehicle, defendant admitted to having three beers, defendant tested positive for alcohol after blowing into the alco-sensor device, and the results of his state-administered breath test indicated blood alcohol levels of over 0.02 grams). In addition, the State introduced similar transaction evidence showing Travis's prior guilty plea to DUI.

App. 71, 72-73 (383 SE2d 632) (1989).

4. Travis also asserts that she was entitled to a mistrial because, during publication of the videotaped traffic stop, the jury may have overheard the prosecutor's remark that Travis was "swaying" during her HGN test.[4] "The refusal to grant a mistrial based on alleged improper remarks by the prosecutor is within the discretion of the trial court, OCGA § 17-8-75, and we will not interfere with the decision on appeal unless there is manifest abuse." (Citation and punctuation omitted.) *Ryan v. State*, 276 Ga. App. 87, 89 (1) (622 SE2d 446) (2005).

At the conclusion of the videotape, Travis's counsel informed the trial court that because the audio portion of the videotape was played by placing a microphone over the laptop computer at the State's table, the microphone accidentally picked up the prosecutor's comment that Travis was swaying during the HGN test. Travis's counsel stated that although both he and Travis overhead the prosecutor's remark, he did not know whether the jury had overheard it. Travis's counsel nevertheless requested that the trial court either question each member of the jury, or otherwise declare a mistrial. The trial court denied both requests.

Travis argues that the prosecutor's comment "not only expressed his personal opinion as to what the jury was seeing for the first time, but also bolstered the credibility of the [t]rooper."[5] However, there is no indication that either the jury or the trial court heard the remark; nor was the remark recorded. Cf. *Miller v. State*, 201 Ga. App. 374, 375 (3) (411 SE2d 112) (1991). Moreover, the trial court explained to the jury, both in its preliminary and closing instructions, that evidence consisted only of witness testimony and exhibits and that the jurors were to decide the case for themselves, based solely on the testimony heard from the witness stand and any exhibits admitted into evidence. Under these circumstances, we cannot say that the trial court abused its discretion in denying Travis's motion for mistrial. See id.

5. Travis contends that the trial court erred by failing to give the jury her requested instruction on the statutory presumption of sobriety as set forth in OCGA § 40-6-392 (b) (1). We disagree. "Among other requirements, a jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete state-

---

[4] To the extent that Travis is also challenging a similar remark made by the prosecutor during his closing argument, the record reflects that Travis interposed no objection at the time it was made, and she therefore waived any objection to the prosecutor's closing argument. See *Steverson v. State*, 276 Ga. App. 876, 878-879 (2) (625 SE2d 476) (2005).

[5] The state trooper later testified that Travis was swaying during his administration of the HGN test.

ment of law. When any part of the requested charge is confusing, inapt, incorrect, or not authorized by the evidence, denial of the request is proper." (Citations omitted.) *Jones v. State*, 242 Ga. App. 357, 359 (3) (529 SE2d 644) (2000).

Travis contends that she was entitled to a jury charge on the statutory presumption of sobriety because her state-administered breath test registered a blood alcohol concentration of less than 0.05 grams. Under OCGA § 40-6-392 (b) (1), "[i]f there was at that time an alcohol concentration of 0.05 grams or less, the trier of fact in its discretion may infer therefrom that the person was not under the influence of alcohol, as prohibited by [OCGA § 40-6-391 (a) (1) and (a) (4)]." Thus, the presumption applies to violations of OCGA § 40-6-391 (a) (1) or (a) (4), for DUI to the extent that the person was a less safe driver ("DUI less safe").[6] See *Ricks v. State*, 255 Ga. App. 188, 190 (1) (564 SE2d 793) (2002). Such a presumption does not arise, however, with respect to violations of OCGA § 40-6-391 (k) (1), for DUI of more than 0.02 percent blood alcohol content while under the age of 21.[7] See OCGA § 40-6-392 (b), (c) (3).

Here, Travis was charged with DUI under both OCGA § 40-6-391 (a) (1) and OCGA § 40-6-391 (k) (1). Solely with respect to her DUI less safe count under OCGA § 40-6-391 (a) (1), Travis requested that the trial court instruct the jury on the presumption of sobriety set forth in OCGA § 40-6-392 (b) (1). The trial court denied Travis's request, finding that in light of the underage count under OCGA § 40-6-391 (k) (1), the OCGA § 40-6-392 (b) (1) presumption of sobriety did not apply and would otherwise be confusing to the jury.

Pretermitting whether the trial court erred by refusing to instruct the jury on the OCGA § 40-6-392 (b) (1) presumption, Travis's request was predicated upon the DUI less safe count, of which the jury found her not guilty. Therefore, any error as to that count was harmless. Cf. *Greene v. State*, 312 Ga. App. 666, 671 (2) (722 SE2d 77) (2011). Travis nevertheless contends that the trial

---

[6] These subsections specifically provide as follows:

(a) A person shall not drive or be in actual physical control of any moving vehicle while:

(1) Under the influence of alcohol to the extent that it is less safe for the person to drive;

. . .

(4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection [i.e., alcohol, drugs, glue, aerosol, or other toxic vapor] to the extent that it is less safe for the person to drive[.] (Punctuation omitted.) OCGA § 40-6-391 (a) (1), (4).

[7] OCGA § 40-6-391 (k) (1) specifically provides as follows: "A person under the age of 21 shall not drive or be in actual physical control of any moving vehicle while the person's alcohol concentration is 0.02 grams or more at any time within three hours after such driving or being in physical control from alcohol consumed before such driving or being in actual physical control ended."

court's refusal to charge the jury on OCGA § 40-6-392 (b) (1) prejudiced her ability to defend against the count of reckless driving, thereby warranting reversal of her conviction on that count. OCGA § 40-6-392 (b) (1), however, applies only to DUI less safe violations, and did not entitle Travis to a presumption of sobriety with respect to her reckless driving violation. See *Cornell v. State*, 239 Ga. App. 127, 128 (2) (520 SE2d 782) (1999) ("It is clear that OCGA § 40-6-392 (b) (1) creates a rebuttable negative presumption in criminal actions arising out of acts alleged to have been committed by any person in violation of Code Section 40-6-391.") (citation omitted). Therefore, Travis's contention fails to provide a basis for reversal of her reckless driving conviction.

6. Travis argues that the trial court erred by permitting the jury to view a law enforcement training videotape about the HGN sobriety test.[8] We disagree.

"[C]ertain materials may be used as tools to illustrate testimony without being admitted as demonstrative evidence, but not where the illustrative material contains erroneous or prejudicial matter unauthenticated by the testimony which it purports to illustrate." (Citations and punctuation omitted.) *Pickren v. State*, 269 Ga. 453, 455 (2) (500 SE2d 566) (1998). Moreover, "[w]hen the materials are not introduced into evidence but are used solely to illustrate the testimony of a witness, minimal authentication is generally required." (Citations and punctuation omitted.) *J. B. Hunt Transport v. Brown*, 236 Ga. App. 634, 635 (1) (b) (512 SE2d 34) (1999) (citing *Vaughn v. State*, 173 Ga. App. 716, 718 (6) (327 SE2d 747) (1985)).

Here, during the testimony of the state trooper, the State was permitted to show the jury a video used to train law enforcement officers in identifying clues during the HGN test. A review of the

---

[8] Although not set forth in her enumeration of error, Travis also contends that the trial court erred by denying Travis's request to make the HGN training videotape a part of the record on appeal. Travis also filed a Motion to Supplement the appellate record with the videotape. As this Court has cautioned before,

> when it appears that photographs or audio or video recordings might be needed on appeal by a party, such party should move the trial court to allow duplicates to be admitted into the record in addition to the originals and be retained by the clerk of the court for inclusion in any appellate record. The trial court should include in its order instructions that the clerk of court include such copies in the appellate record transmitted to this Court, where the appealing party either requests their inclusion or requests that nothing be omitted from the record on appeal. Such a practice would ensure the completeness of the appellate record without delay.

(Punctuation omitted.) *Lynn v. State*, 300 Ga. App. 170, 173 (2) (684 SE2d 325) (2009). We can nevertheless address Travis's enumeration of error because the State does not dispute the accuracy of the offending excerpts cited by Travis. Cf. *Griffin v. State*, 243 Ga. App. 282, 285 (4), n. 1 (531 SE2d 175) (2000). For this reason, and because Travis concedes in her appellate brief that a copy of the videotape is not necessary for determination of the appeal, we deny Travis's Motion to Supplement the record.

record shows that the purpose of using the video was to aid the jury in understanding the state trooper's testimony about how a person's eyes respond during the HGN test. Notably, the state trooper authenticated and identified the video as the one he had viewed earlier that day and that accurately represented HGN as it would appear on a person who is under the influence of alcohol.[9]

> [W]hen the trial court has exercised its discretion to admit [materials for the purpose of illustrating testimony], it will only rarely be found in error, at least if potentially misleading inaccuracies have been pointed out by witnesses for the proponent, or could have been exposed upon cross-examination.

(Citation omitted.) *J. B. Hunt Transport*, supra, 236 Ga. App. at 636 (1) (b). Here, given its purpose of illustrating the state trooper's testimony, along with the fact that any inaccuracies in the training video's depiction of HGN could have been brought out upon cross-examination of the state trooper, we hold that the trial court did not abuse its discretion in allowing the HGN test training video to be played to the jury. Cf. id.; accord *Hartsock v. State*, 322 SW3d 775, 777-780 (Tex. Ct. App. 2010) (holding that trial court did not abuse its discretion in admitting law enforcement training DVD showing how a person's eyes look with and without HGN, where DVD was shown to the jury for the purpose of helping them understand the officer's testimony about the HGN test administered to the defendant).

7. Travis contends that the trial court erred in failing to merge, for purposes of sentencing, the offense of speeding into that of reckless driving. Travis argues that the speeding offense is included in the reckless driving offense because the only evidence to support it was Travis's speeding violation. Cf. *Luckey v. State*, 313 Ga. App. 502, 505 (3), n. 2 (722 SE2d 114) (2012) (citing *Drinkard v. Walker*, 281 Ga. 211, 213 (636 SE2d 530) (2006)).[10] The State concedes, and we agree, that the two offenses should have been merged for sentencing. Travis should have been convicted and sentenced only

---

[9] We note that nothing in the record indicates that the video showed Travis's eyes or was otherwise used as a re-enactment of the HGN test administered to Travis. We therefore "decline to apply the evidentiary rule applicable to video re-enactments[.]" (Punctuation omitted.) *J. B. Hunt Transport*, supra, 236 Ga. App. at 636 (1) (b) (citing *Pickren*, supra, 269 Ga. at 455 (2)). Thus, the State was not required to show that the videotape was a true and accurate representation of the events sought to be depicted. See id.

[10] "[A] crime is included in the other where it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime." (Punctuation and footnote omitted.) *Drinkard*, supra, 281 Ga. at 213.

for reckless driving. Therefore, Travis's conviction and sentence for speeding are vacated and this case is remanded for resentencing.

*Judgment affirmed, sentence vacated, and case remanded. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED FEBRUARY 22, 2012.

*H. Maddox Kilgore*, for appellant.
*Robert Stokely, Solicitor-General, Stephen J. Tuggle, Sandra N. Wisenbaker, Assistant Solicitors-General*, for appellee.