**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 29, 2012**

# In the Court of Appeals of Georgia

A12A1000. MILLER v. THE STATE.

MILLER, Judge.

Following a stipulated bench trial, Scott Charles Miller was convicted of

driving with unlawful alcohol concentration (OCGA § 40-6-391 (a) (5)) and speeding

(OCGA § 40-6-181). The trial court denied Miller's motion for new trial, as amended.

On appeal, Miller argues that the trial court erred in denying his motion to suppress

the results of Miller's breath test. Discerning no error, we affirm.

> Because the trial court sits as the trier of fact when ruling on a motion
> to suppress . . ., its findings based upon conflicting evidence are
> analogous to a jury verdict and should not be disturbed by a reviewing
> court if there is any evidence to support them. When we review a trial
> court's decision on such motions to exclude evidence, we construe the
> evidence most favorably to uphold the findings and judgment, and we
> adopt the trial court's findings on disputed facts and credibility unless

they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.

(Citations and punctuation omitted.) *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005).

Viewed in the light most favorable to the trial court's findings, the evidence, which was stipulated to by the parties, shows the that at approximately 3:00 a.m. on May 1, 2010, an officer's radar gun clocked Miller's speed at 64 miles per hour in a zone where the posted speed limit was 45 miles per hour. The officer initiated a traffic stop. When the officer approached Miller's vehicle, he noticed a strong odor of alcohol emanating from the vehicle. The officer asked Miller how much he had to drink, and Miller responded, "Not that much," and that he had quit drinking earlier in the evening. After Miller voluntarily submitted to field sobriety tests, the officer conducted an alco-sensor test. Miller then admitted that he had had four to five drinks and had stopped drinking about an hour and a half earlier. After indicating to Miller that his alco-sensor result was positive for the presence of alcohol, the officer stated

to Miller, "[A]s long as you continue to be cool or whatever and be cooperative, what I'll do is, is I'll make the process go by real quick[.]" The officer then placed Miller under arrest. The officer and Miller engaged in a conversation about the alco-sensor test, having someone pick-up Miller's vehicle, how to sit comfortably in the back of the patrol car while wearing handcuffs, and whether Miller wanted the officer to perform a radar accuracy test. The officer then read Miller the implied consent notice and asked whether Miller would submit to a State-administered breath test. Miller consented to the test, which registered blood alcohol readings of .129 and .124.

At the start of Miller's bench trial, he moved to suppress the results of the breath test, contending that the officer coerced Miller into consenting to the test. The trial court denied his motion and found that Miller was not coerced or pressured to take the test. Miller challenges this ruling on appeal.

> One who operates a motor vehicle on Georgia's highways is deemed to have given consent to chemical testing of a bodily substance to determine the presence of alcohol or other drugs. Although consent is implied, before test results may be admitted into evidence the state must show that the accused had been advised of his rights under the Implied Consent Statute.

(Citations omitted.) *Travis v. State*, 314 Ga. App. 280, 282 (2) (724 SE2d 15) (2012); see OCGA § 40-5-67.1 (b) (implied consent notice). However,

> [e]ven when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.

(Punctuation and footnote omitted.) *Page v. State*, 296 Ga. App. 431, 433 (1) (a) (674 SE2d 654) (2009).

Here, it is undisputed that the officer's reading of the implied consent notice was accurate, that the officer asked whether Miller consented, and that the officer told Miller he could answer yes or no. Miller nevertheless contends that the officer's statement, that "as long as you continue to be cool . . .[,] and be cooperative, . . . I'll make the process go by real quick for you," was coercive insofar as it implied that if Miller did not take the test, the officer would have protracted the arrest process. The officer's statement, however, was not deceptively misleading information regarding the breath test. Nor does the traffic stop video clearly reflect that the officer's statement was made specifically to encourage or coerce Miller into consenting to a

4

breath test.[1] Notably, after making the statement, the officer placed Miller under arrest and then proceeded to engage in a conversation with Miller regarding topics other than the breath test. The officer did not in fact mention the State-administered breath test until several minutes after he made the statement about being cool and cooperative. Under the circumstances of this case, we conclude that there was a substantial basis for the trial court's conclusion that the officer's statement did not render Miller incapable of making an informed decision about whether to submit to the breath test.

*Judgment affirmed. Ray, J., concurs. Mikell, P. J., concurs specially.*

---

[1] This is unlike the situation in *State v. Rowell*, 299 Ga. App. 238, 239 (682 SE2d 343) (2009), upon which Miller relies heavily. In *Rowell*, the defendant initially declined to give consent after the officer read the implied consent notice; however, the officer then persuaded the defendant into rescinding her refusal by stating that "if you blow under the legal limit I can let you go home to your son, and everything will be fine." Id. Based on these circumstances, this Court affirmed the trial court's finding that the officer's procedure in persuading the defendant to rescind her refusal was not fair or reasonable. Id. at 240.

A12A1000. MILLER v. THE STATE

MIKELL, Presiding Judge, concurring specially.

I write separately to emphasize that the majority's outline on page 2 of the method of appellate review of motions to suppress applies only when, as here, the evidence was stipulated. Our review is never de novo when the decision below depended on live, testimonial evidence because such evidence, in view of Georgia precedents about the fact-finder's role, is technically never "uncontroverted." In Georgia a trier of fact, judge or jury, may believe or disbelieve all or any part of the testimony of *any* witness.[1] To require as a matter of law that a jury or a judge must believe a witnesses testimony would pervert the truth seeking mission of the trier of fact.

---

[1] The majority cites our otherwise very scholarly opinion *State v. Tousley*, 271 Ga. App. 874 (611 SE2d 139) (2005) (Ellington, J.). *Tousley* relied on dictum in the much criticized decision *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (trial judge's decision based on two live witnesses affirmed). *Vansant* is criticized for its dictum, not for its quite reasonable holding. See, e.g., *Miller v. State*, 288 Ga. 286 (702 SE2d 888) (2010) (Melton, J.) (reversing Court of Appeals, which had used a de novo analysis). Accord *Johnson v. State*, 313 Ga. App. 137 (720 SE2d 654) (2011) (Mikell, J., concurring specially); *Robinson v. State*, 295 Ga. App. 136, 139-141 (670 SE2d 837) (2008) (Mikell, J., concurring specially); see also *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994). But see *Jones v. State*, 314 Ga. App. 247, 248 (723 SE2d 697) (2012) (Doyle, J.); *Wilson v. State*, 308 Ga. App. 383 (708 SE2d 14) (2011) (Andrews, J.).