**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A2320. THE STATE v. JOHNSON.

HODGES, Judge.

This appeal concerns two cases pending against Anthony Johnson in Paulding County in which he is accused, among other crimes, of driving under the influence of alcohol to the extent he was less safe (OCGA § 40-6-391 (a) (1)). The State sought to introduce a prior DUI arrest in both cases pursuant to OCGA § 24-4-417 and OCGA § 24-4-404, which the trial court denied. The State appealed, contending that (1) the trial court erred in refusing to admit the prior arrest pursuant to OCGA § 24-4-417 on the ground that the Georgia and United States Constitutions prohibit its admission; and (2) the trial court abused its discretion in denying its motion to admit the prior act evidence pursuant to OCGA § 24-4-404. This appeal was previously transferred by this Court to the Supreme Court of Georgia because the appeal

concerns the constitutionality of evidentiary admission of refusals to consent to State-administered breath tests. The Supreme Court transferred the case back to this Court following its opinion in *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019), as the appeal no longer presents a novel constitutional question. Following this transfer, we find that the trial court correctly determined that the State cannot comment on Johnson's invocation of his right not to incriminate himself by refusing a breath test. However, we find that evidence of Johnson's refusal of the blood test is admissible and that the trial court failed to analyze whether the prior arrest was otherwise admissible. For these reasons, we vacate the opinion of the trial court and remand the case with instruction.

"A trial court's decision to admit [or exclude] other acts evidence will be overturned only where there is a clear abuse of discretion." *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015). "[E]ven where a trial court's ultimate ruling is subject to only an abuse of discretion review, the deference owed the trial court's ruling is diminished when the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree." (Citation and punctuation omitted.) *State v. Atkins*, 304 Ga. 413, 417 (2) (819 SE2d 28) (2018). However, when the issue presented involves only the interpretation of a statute, such is a question of

2

law which this Court reviews de novo. *State v. Walker*, 342 Ga. App. 733 (805 SE2d 262) (2017).

Here, the evidence shows that on February 7, 2015, an officer conducted a traffic stop of Johnson's vehicle, purportedly after witnessing Johnson remain stopped at a green light for several seconds, make a wide turn, and fail to maintain his lane. In the citation written by the officer, he contends Johnson was slow to react to him, slurred his speech, needed questions repeated to him, and smelled of alcohol. The parties agree that the officer arrested Johnson, who then refused to submit to the State-administered testing that was requested.[1] As a result of this, Johnson was cited with, among other crimes, driving under the influence to the extent he was less safe (OCGA § 40-6-391 (a) (1)).

The evidence also shows that while these charges were pending, Johnson was pulled over again on November 10, 2015. On that occasion, according to the citation issued, Johnson struck a police vehicle which was stopped on the side of the roadway. The officer claimed that he smelled alcohol on Johnson and that Johnson admitted to

---

[1] The language of the stipulation filed by the parties makes it unclear if blood and breath testing was requested following all of Johnson's arrests discussed in this opinion, or if only one or the other test was requested each time. This lack of clarity does not impact our legal analysis on the admissibility of the evidence at this time.

having had a beer about an hour before. The officer further claimed in the citation that Johnson offered to "blow" and had several unsuccessful attempts at providing a sufficient breath sample on the alco-sensor, before ultimately providing an adequate sample which registered as positive for alcohol.[2] The parties agree that Johnson was then arrested and refused to submit to the State-administered testing that was requested. As a result of this arrest, Johnson was charged with, among other crimes, driving under the influence to the extent it was less safe (OCGA § 40-6-391 (a) (1)).

In both of these cases, the State sought to introduce a prior DUI arrest by filing a notice of intent to produce other act evidence pursuant to OCGA §§ 24-4-404 and 24-4-403, as well as a separate notice of intent to introduce other act evidence pursuant to OCGA § 24-4-417. The evidence the State sought to introduce was a 2010 arrest for driving under the influence of alcohol to the extent it was less safe, which resulted in Johnson pleading guilty to reckless driving in 2012. The citation issued by police for that incident claims that an officer arrived on the scene after Johnson struck a utility pole, and that the officer smelled alcohol on Johnson. The

---

[2] "An alco-sensor is used only as an initial screening measure that gives a positive/negative result and aids the police officer in determining probable cause to arrest a motorist suspected of DUI of alcohol. It is not a tool used to determine the amount of alcohol in a person's blood[.]" (Citation omitted.) *Travis v. State*, 314 Ga. App. 280, 283 (3) (724 SE2d 15) (2012).

citation indicates that Johnson admitted having had a beer earlier as well as previously taking Oxycontin, Oxycodone, Soma, and Xanax. The parties agree that Johnson was arrested and then refused to consent to the State-administered testing that was requested.

Following a single hearing covering all notices filed in both cases, the trial court refused to permit introduction of the prior 2010 DUI arrest under either OCGA §§ 24-4-417 or 24-4-404. Relying on the Supreme Court's decision in *Olevik v. State*, 302 Ga. 228 (806 SE2d 505) (2017), the trial court found that

> Paragraph XVI of the Georgia Constitution or the Fourth Amendment of [the] United States Constitution precludes the State from using Mr. Johnson's refusals, in the 2010 arrest or the current cases, against him at trial. Mr. Johnson had a right not to incriminate himself under the Georgia Constitution when requested to submit to a [S]tate-administered breath test and he had a right under the United States Constitution when requested to submit to a [S]tate[-]administered blood test.

The State timely appeals this order.

1. The State first contends that the trial court erred in refusing to admit the prior 2010 arrest pursuant to OCGA § 24-4-417 on the ground that the Georgia and United States constitutions prohibit its admission. We find that the trial court correctly found evidence of Johnson's refusal to consent to breath testing to be inadmissible, but

5

erred in finding Johnson's refusal to submit to blood testing inadmissible. We also find that the analysis conducted by the trial court is incomplete as to whether evidence of the arrest was otherwise admissible. Accordingly, we vacate the trial court's refusal to admit the evidence pursuant to OCGA § 24-4-417 and remand with instruction.

The parties do not dispute the facts at this stage, and the trial court made no factual findings in its order. As a result, we review de novo the trial court's interpretation of the admissibility of the prior DUI under OCGA § 24-4-417 and apply a plain legal error standard of review. See *Patel v. State*, 341 Ga. App. 419 (801 SE2d 551) (2017) ("We begin by noting that the interpretation of a statute is a question of law, which we review de novo on appeal. Moreover, because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review.") (citation and punctuation omitted).

So viewed, OCGA § 24-4-417 provides, in part,

(a) In a criminal proceeding involving a prosecution for a violation of Code Section 40-6-391,[3] evidence of the commission of another

---

[3] In relevant part, OCGA § 40-6-391 provides: "A person shall not drive or be in actual physical control of any moving vehicle while: (1) Under the influence of alcohol to the extent that it is less safe for the person to drive[.]"

6

violation of Code Section 40-6-391 on a different occasion by the same accused shall be admissible when:

(1) The accused refused in the current case to take the state administered test required by Code Section 40-5-55[4] and such evidence is relevant to prove knowledge, plan, or absence of mistake or accident[.]

---

[4] OCGA § 40-5-55 (a) provides that:

The State of Georgia considers that any person who drives or is in actual physical control of any moving vehicle in violation of any provision of Code Section 40-6-391 constitutes a direct and immediate threat to the welfare and safety of the general public. Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities. The test or tests shall be administered at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391. The test or tests shall be administered as soon as possible to any person who operates a motor vehicle upon the highways or elsewhere throughout this state who is involved in any traffic accident resulting in serious injuries or fatalities. Subject to Code Section 40-6-392, the requesting law enforcement officer shall designate which of the test or tests shall be administered, provided a blood test with drug screen may be administered to any person operating a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities.

(b) Any person who is dead, unconscious, or otherwise in a condition rendering such person incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this Code section, and the test or tests may be administered, subject to Code Section 40-6-392. . . .

Here, it is undisputed that this case "involv[es] a prosecution for a violation of Code Section 40-6-391[,]" and the parties stipulated that Johnson refused either blood or breath State-administered tests after being arrested in all three incidents. Accordingly, before the trial court, the State contended that it could introduce the prior 2010 DUI arrest, including the fact that Johnson refused State-administered testing on that prior occasion as well, to show knowledge, plan, and absence of mistake or accident. Specifically, the State contended below that,

> the other act evidence that the State seeks to admit in this case is relevant to prove [Johnson's] knowledge, plan, and absence of mistake or accident because based on prior occasions on which [Johnson] had driven under the influence, [Johnson] had an awareness that his ingestion of an intoxicant impaired his ability to drive safely. Furthermore, it shows he was conscious of his guilt and knew that the test results likely would tend to show that he was under the influence. In addition, [Johnson] acquired the knowledge about the means that law enforcement officers use to determine whether and to what extent a driver is under the influence.

During the hearing before the trial court, the State further claimed that it intended to use the evidence of the prior DUI arrest to demonstrate that Johnson "learned what he should do when it comes to field sobriety evaluations and the State administered test" as a result of his prior refusal.

8

Following the trial court's order excluding the prior DUI arrest evidence, the State appealed this case to this Court in Case No. A18A1093; however, given that the case then presented a novel constitutional question, the case was transferred to the Supreme Court where it was docketed as Case No. S19A0272. While the State's appeal was pending before the Supreme Court, the *Elliott* case was decided. 305 Ga. 179. In *Elliott*, the Supreme Court acknowledged its prior holding in the *Olevik* case, which relied on Paragraph XVI of the Bill of Rights of the Georgia Constitution ("Paragraph XVI"), to find that "the Georgia Constitution's right against compelled self-incrimination prevents the State from forcing someone to submit to a chemical *breath test*." (Emphasis supplied.) 305 Ga. at 180. In light of the recognition of the constitutional right to refuse State-administered breath tests, the Supreme Court next had to answer the question of whether exercise of this constitutional right could be admitted as evidence against a defendant. The Supreme Court answered that question in the negative, holding "that Paragraph XVI precludes admission of evidence that a suspect refused to consent to a breath test." (Footnote omitted.) Id. at 223.

With regard to the admissibility of refusal to consent to a *blood test*, however, the *Olevik* opinion stated:

9

In *Strong* [*v. State*, 231 Ga. 514 (202 SE2d 428) (1973)], we considered a defendant's challenge to the police's withdrawal of a blood sample from the defendant while he was unconscious on two grounds: (1) unreasonable search and seizure and (2) violation of the right against compelled self-incrimination. As to the first ground, we concluded that the warrantless search was proper as a search incident to an arrest, and even if the defendant was not under arrest, the "evanescent nature of alcohol in the blood" supported the extraction. *Strong*, 231 Ga. at 518, 202 SE2d 428. As to the second ground, we concluded that extracting blood did not cause the defendant to be a witness against himself under the Fifth Amendment and "similar provisions of Georgia law," approvingly citing cases to the effect that the removal of evidence from a defendant's body does not implicate his right against compelled self-incrimination. Id. at 519, 202 SE2d 428. The holding as to the first ground is not good law, as these more recent decisions have explained. Nothing we say here should be understood as casting any doubt on *Strong*'s self-incrimination holding.

*Olevik*, 302 Ga. at 233 (2) (a), n. 2. This fact was later emphasized in a special concurrence in *Elliott* authored by Justice Boggs, joined by Justices Blackwell and Bethel, which highlighted that the holdings of *Olevik* and *Elliott* are limited to chemical tests of a driver's *breath*, not tests of a driver's *blood*. 305 Ga. at 224 (Boggs, J., concurring).

10

Following its decision in *Elliott,* and after additional briefing by the parties concerning the effect of *Elliot*, the Supreme Court transferred this case back to this Court for decision, stating

> *One of the issues* raised in this appeal invoked this Court's constitutional question jurisdiction. However, since the case was docketed, this Court has issued controlling precedent on that issue. See *Elliott v. State*, [305 Ga. 179 (824 SE2d 265) (2019)]. *The remaining issues* being evidentiary in nature, [the Supreme] Court is without jurisdiction. See *Phillips v. State*, 229 Ga. 313 (191 SE2d 61) (1972). This case is therefore transferred to the Court of Appeals. (Emphasis supplied.)

"[T]he Supreme Court's determination in its transfer order is final and binding." (Citation and punctuation omitted.) *Vaughn v. State*, 352 Ga. App. 32, 37 (2) (833 SE2d 723) (2019); see also Ga. Const. of 1983, Art. VI, Sec. VI, Par. II ("The Supreme Court shall be a court of review and shall exercise exclusive appellate jurisdiction in the following cases: (1) All cases involving the construction of . . . the Constitution of the State of Georgia or of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question. . . .").

With jurisdiction now having been vested with this Court, we look to the trial court proceedings, as well as the language of OCGA § 24-4-417, to analyze the State's enumeration of error. A review of the trial court's order makes clear that it ruled inadmissible not just evidence of Johnson's refusals to submit to State-administered breath testing, but also his refusal to submit to blood testing and evidence of the mere existence of the prior 2010 DUI arrest. The trial court did so solely on the basis that Johnson had a constitutional right to refuse such testing which could not subsequently be used against him as evidence. This analysis is only partially accurate and it is incomplete. Implicit in the trial court's order is a finding that *Olevik* prohibits introduction of a prior DUI arrest or other circumstances of the arrest which are unrelated to the refusal of State-administered breath testing. Also implicit in the trial court's order is a finding that both the Georgia and United States Constitutions make evidence of refusal to submit to a blood test inadmissible. This is not an accurate statement of either Georgia or federal constitutional law, and we will address these issues in turn.

*a. Evidence of Existence of the DUI Arrest and Attendant Circumstances*

In light of its determination that all evidence of the prior 2010 DUI arrest was constitutionally inadmissible, the trial court did not address whether evidence of the

12

existence of the arrest and other attendant circumstances, excluding the evidence rendered inadmissible by *Elliott*, may be introduced at the trial of this case pursuant to OCGA § 24-4-417. Although the State sought admission of the evidence pursuant to OCGA § 24-4-417 for the impermissible purpose of inviting the jury to draw inferences about Johnson's guilt as a result of his refusal to consent to breath testing, it also sought admission under that statute to demonstrate Johnson's "knowledge, plan, and absence of mistake or accident because based on prior occasions on which [Johnson] had driven under the influence, [Johnson] had an awareness that his ingestion of an intoxicant impaired his ability to drive safely." Nothing in *Elliott* forecloses or even addresses admission of the existence of a prior DUI arrest on this basis.

### b. Evidence of the Refusal to Consent to a Blood Test

To analyze the propriety of the trial court's ruling that evidence of Johnson's refusal to submit to a blood test is inadmissible, this Court must examine United States Supreme Court precedent as well as the scope of the holdings of *Olevik* and *Elliott*.

As for the United States Constitution, the trial court erred in relying on the Fourth Amendment to find the evidence inadmissible. The Fourth Amendment

13

protects against unreasonable searches and seizures, and the United States Supreme Court has recently held that the government cannot compel a warrantless blood test as a search incident to arrest given the privacy interests at stake with the intrusion into the body caused by a blood test. *Birchfield v. North Dakota*, 579 U. S. ___ (V) (C) (3) (136 SCt 2160, 2165, 195 LE2d 560) (2016) ("Because breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests . . . a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving . . . [A] warrant is not needed in this situation."). This has no bearing on whether the United States Constitution permits a lawful refusal to submit to blood testing to be subsequently admitted at trial.[5] In fact, the United States Supreme Court has found such evidence *not* to implicate the Fifth Amendment's right against self-incrimination. *South Dakota v. Neville*, 459 U. S. 553, 564 (II) (103 SCt 916, 74 LE2d 748) (1983) ("We hold, therefore, that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the

---

[5] Indeed, *Birchfield* acknowledged that many jurisdictions permit introduction of evidence of refusal of a blood test into evidence at trial, and did not note any problem with such practice. 136 SCt at 2179 (V) (C) (1).

14

privilege against self-incrimination."). Accordingly, the United States Constitution provides no basis for excluding the evidence.

As for the Georgia Constitution, we start by reviewing *Olevik*, in which the Georgia Supreme Court held that "submitting to a breath test implicates a person's right against compelled self-incrimination under the Georgia Constitution[.]" 302 Ga. at 228. This holding is rooted in the Supreme Court's analysis of Paragraph XVI, which provides that "No person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. After reviewing the historical meaning of that portion of our State's Constitution, the Supreme Court held that the protection against self-incrimination extends to compelled acts, and that the deep-lung air-breathing required for the State-administered breath test constitutes a compelled act. *Olevik*, at 243-244 (2) (c) (iii). Accordingly, *Olevik* held that Paragraph XVI prohibits the State from compelling an individual to submit to the State-administered breath test, because doing so would violate an individual's right against self-incrimination. Id.

After deciding that Paragraph XVI protects an individual from being compelled to submit to State-administered breath testing, the Supreme Court next had to address whether evidence of a refusal to consent to such breath testing was admissible. In

*Elliott*, after a historical analysis of the state of the law at the time of the ratification of the Georgia Constitution in 1877 when Paragraph XVI was first adopted, the Supreme Court found that Paragraph XVI "prohibited admission of a defendant's refusal to speak or act as evidence against him." 305 Ga. at 218 (IV) (C) (ii).

The Supreme Court, however, has not treated refusal to consent to *blood* testing the same as it has treated refusal to consent to *breath* testing. As the Supreme Court specified in *Olevik*, "Paragraph XVI prohibits compelling a suspect to perform an act that itself generates incriminating evidence[,] it does not prohibit compelling a suspect to be present so that another person may perform an act generating such evidence." 302 Ga. at 243 (2) (c) (iii). In support of this conclusion, the Supreme Court cited various actions which were previously held not to violate the protection against self-incrimination including: removing clothing from a defendant, taking shoes from a defendant, taking blood-stained clothes from a defendant, pulling boots off a defendant, requiring a convicted felon to provide a DNA sample, requiring a defendant to strip to the waist to allow police to photograph tattoos on his body, taking an impression of a defendant's teeth, withdrawing blood from an unconscious defendant, and requiring a defendant to undergo surgery to remove a bullet from his body. Id. at 242 (2) (c) (iii). The Supreme Court has, therefore, recognized a

16

distinction between submitting to a *breath* test, which requires the compelled act of deep-lung breathing, and submitting to a *blood* test, which merely requires the defendant's presence so that another can acquire the evidence from his body. As Justice Boggs made clear in his concurrence in *Elliott*, the scope of the Supreme Court's holdings in *Olevik* and *Elliott* is limited to breath tests and does not apply to tests of a driver's blood. 305 Ga. at 224 (Boggs, J., concurring).

It appears the trial court mistakenly believed *Olevik*'s holding extended to blood tests as a result of a quote from a portion of the opinion which discussed *Birchfield*, which, as stated above, is a case interpreting the Fourth Amendment to the United States Constitution. In *Olevik*, the Supreme Court acknowledged that its prior case law mistakenly analyzed the circumstances under which the State could compel warrantless blood testing of a suspect without violating Paragraph XIII of the Bill of Rights of the Georgia Constitution ("Paragraph XIII"). 302 Ga. at 232-233 (2) (a). This discussion did not implicate Paragraph XVI's protection against self-incrimination, but rather an individual's right to be free from unreasonable search and seizure guaranteed by Paragraph XIII. The holdings in *Olevik* and *Elliott* are grounded in Paragraph XVI, and thus the commentary in *Olevik* concerning a

17

different constitutional protection in a different context is inapposite to a consideration of the admissibility of Johnson's refusal to consent to blood testing.

In summary, *Olevik* and *Elliott* make clear that evidence of a defendant's invocation of the right against self-incrimination by refusing to consent to a State-administered breath test is inadmissible. Further, neither the United States nor Georgia Supreme Courts have found admission of a refusal to consent to blood testing to implicate the right against self-incrimination. Accordingly, such evidence is not constitutionally inadmissible. Lastly, *Olevik* and *Elliott* concern a defendant's constitutional right not to incriminate himself or herself, rather than the constitutional right to be free from unreasonable searches and seizures. Although DUI cases often involve questions concerning a defendant's rights under the Fourth Amendment or Paragraph XIII, especially concerning the ability of the State to obtain a non-consensual breath or blood sample, these questions are wholly separate from a defendant's constitutional right to avoid self-incrimination.

As applied to the facts of this case, the trial court properly concluded that evidence of Johnson's refusal to submit to a State-administered breath test was inadmissible, but then improperly failed to analyze whether evidence of the existence of the arrest and other attendant circumstances were otherwise admissible pursuant

18

to OCGA § 24-4-417.[6] Additionally, the trial court incorrectly found that the Georgia and United States Constitutions preclude admission of Johnson's refusal to submit to blood testing. Accordingly, "[b]ecause the trial court failed to perform the legal analysis required in this context, we vacate [the trial court's refusal to admit evidence of the prior DUI pursuant to OCGA § 24-4-417] and remand for a hearing and a ruling based on a proper analysis and relevant findings." *Sampler v. State*, 294 Ga. App. 174, 174-175 (669 SE2d 195) (2008).[7]

---

[6] In supplemental briefing before the Supreme Court, the parties discussed the constitutionality of admission of Johnson's refusal to submit to field sobriety testing. This argument was not well-developed below nor was it enumerated as error on appeal and we will not consider it. *Campbell v. State*, 253 Ga. App. 325, 326 (3) (558 SE2d 857) (2002) ("This attempt to raise a new issue in the supplemental brief provides nothing for us to review. Attempts in a supplemental brief to expand the issues beyond the scope of the enumeration of errors are improper.") (citation and punctuation omitted). Accordingly, nothing herein speaks to the admissibility of such evidence.

[7] In supplemental briefs filed with the Supreme Court prior to return of the case to this Court, the State advanced an argument, for the first time, that evidence of the manner in which Johnson interacted with the officers involved in his arrests, including refusing testing, may constitute admissible intrinsic evidence. This argument was not advanced below nor was it enumerated as error and we do not consider it. *Campbell*, 253 Ga. App. at 326 (3).

2. The State next contends that the trial court abused its discretion by denying its motion to offer evidence of the prior DUI arrest pursuant to OCGA § 24-4-404. We agree.

OCGA § 24-4-417 is not "the exclusive means to admit or consider evidence described in [that] Code section." OCGA § 24-4-417 (c). The State may also seek to introduce evidence pursuant to OCGA § 24-4-404 (b), which provides in relevant part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As our Supreme Court has explained,

> Even relevant evidence offered for a proper purpose under Rule 404 (b) may be excluded under OCGA § 24-4-403 ("Rule 403"), however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. . . . Under [the relevant test], in order to be admissible, the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character . . . ; (2) the probative value of the other acts evidence is not

20

substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.

(Citations and punctuation omitted.) *State v. Jones*, 297 Ga. at 158-159 (1).

Although the trial court also excluded evidence of Johnson's prior DUI arrest pursuant to OCGA § 24-4-404, it is clear that it did so solely based on the incorrect basis that admission of the evidence was unconstitutional without considering the applicability of Rule 404 or conducting the above test. "While the abuse-of-discretion standard presupposes a range of possible conclusions that can be reached by a trial court with regard to a particular evidentiary issue, it does not permit a clear error of judgment or the application of the wrong legal standard." (Citations and punctuation omitted.) *State v. Dowdell*, 335 Ga. App. 773 (783 SE2d 138) (2016). Accordingly, we vacate the trial court's refusal to admit the evidence pursuant to OCGA § 24-4-404 and remand the case to the trial court for reconsideration.[8]

---

[8] Johnson contends that the State abandoned its attempt to admit the evidence pursuant to OCGA § 24-4-404. We disagree. The State filed a notice of intent to introduce the prior DUI arrest pursuant to OCGA § 24-4-404, but at the hearing before the trial court, the prosecutor stated "I filed a motion to introduce other acts under OCGA 24-417 *(sic)* and 24-4 -- 403. I'm going to reserve under the 4-403 at this time and go forward under the [417] motion." While the State relinquished its opportunity to orally argue its notice pursuant to OCGA § 24-4-404 at the prior

21

*Judgment vacated and case remanded. Dillard, P. J., and Gobeil, J., concur.*

---

hearing, nothing about this statement implies an intent to abandon or withdraw the argument. Indeed, the trial court included a ruling under OCGA § 24-4-404 in its order.